[No. 6264.  Decided June 13, 1906.]

THE STATE OF WASHINGTON, *on the Relation of the Ami Company, Plaintiff*, v. THE SUPERIOR COURT FOR PIERCE COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—CONDEMNATION BY RAILWAY—FAILURE TO COMPLY WITH CORPORATION LAWS—FILING AND LICENSE FEES. Upon certiorari to review a proceeding by a foreign railway company to condemn lands, it cannot be objected that the company failed to show the payment of a license fee and the issuance by the secretary of state of a license to do business in this state, where (1) the objection is raised by private parties; (2) the application avers that tne company is so authorized; (3) the articles of incorporation were filed prior to the enactment of the law requiring a license; and (4) where the law requires, and the court will presume, the payment of a fee and issuance of a license prior to the filing of the articles, which were shown to have been filed.

PLEADING—ANSWER IN CONDEMNATION PROCEEDINGS. In condemnation proceedings no answer is required, and it is not error to strike the same.

EMINENT DOMAIN—FOR RAILROAD—PUBLIC USE AND PUBLIC NECESSITY—EVIDENCE—SUFFICIENCY. Sufficient proof of public use and necessity is shown for the condemnation of a railroad right of way, for a branch three miles long, although there is at present but one factory in the territory to be served, where it appears that the territory is tide lands of considerable extent, peculiarly adapted to manufacturing purposes, and it is conceded that the branch when completed will be a commercial railroad, and that the use is a public one; since the question of public use is determined by the character and not the extent of the use.

Certiorari to review an order of the superior court for Pierce county, Huston, J., entered May 21, 1906, after a hearing on the merits, adjudging a public use, etc., in an action to condemn land for railway purposes.  Affirmed.

*H. S. Griggs*, for relator.  The case should have been dismissed because the Railway Company failed to prove its corporate capacity and right to condemn land or do any business in this state.  Laws 1897, p. 134, Bal. Code, § 4285.  The

[1]Reported in 85 Pac. 669.

right of eminent domain is in derogation of common law rights, and the provisions of the statutes will be construed strictly against its exercise. *Healy Lum. Co. v. Morris,* 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964; *State ex rel. Tacoma Ind. Co. v. White River Power Co.,* 39 Wash. 648, 82 Pac. 150; Lewis, Eminent Domain, §§ 310, 392; *Weed v. Goodwin,* 36 Wash. 31, 78 Pac. 36. Where an agreement has been made for the sale of the land, the petitioners cannot repudiate it and condemn the property. Lewis, Eminent Domain, § 304a and cases cited. The proposed railroad is but a spur to the Dempsey mill, and the public interests do not require it; a branch or spur road to a single industry is not of such public interest that private property can be taken for it. Lewis, Eminent Domain, §§ 171, 181, 182, and case cited; Id., pp. 439, 440, 896; *Chicago etc. R. Co. v. Wiltse,* 116 Ill. 449, 6 N. E. 49; *Sholl v. German Coal Co.,* 118 Ill. 427, 10 N. E. 199; *Gustafson v. Hamm,* 56 Minn. 334, 57 N. W. 1054; *Pittsburg etc. R. Co. v. Benwood Iron-Works,* 31 W. Va. 710, 8 S. E. 453; *Kyle v. Texas etc. R. Co.,* 3 Tex. App. C. C. 518; Const., art. 1, § 16; Bal. Code, § 5640.

*B. S. Grosscup,* for respondents.

RUDKIN, J.—On the 4th day of May, 1906, the Northern Pacific Railway Company filed its petition in the court below by which it sought to appropriate certain real property therein described for railway purposes. On the 19th day of May, 1906, a hearing was had on this petition, after notice to all parties in interest, and upon such hearing the court entered an order, adjudging the contemplated use a public one and that the public interest required the prosecution of the enterprise, and directing the empaneling of a jury to assess the damages. The Ami Company, one of the defendants in the condemnation proceeding, thereupon applied to this court for a writ of review to review the order of the court below on the questions of public use and public neces-

sity.   The writ was allowed, return made, and the entire
record is now before us.

The first assignment of error is that the respondent failed
to show a compliance with the requirements of the act of
March 13, 1897 (Laws 1897, p. 134).   Section 1 of that
act provides that, every corporation incorporated under the
laws of this state, or any other state or territory of the United
States, having a capital stock divided into shares, must play
to the secretary of state, for the use of the state, a fee of $10
upon the filing of the articles of incorporation in the office
of the secretary of state, and that no such corporation shall
have or exercise any corporate powers or be permitted to do
any business in this state until such fee shall have been paid;
and that the secretary of state shall not file articles of incor-
poration, or their equivalent, or give any certificate therefor
until such fee shall have been paid.   Section 5 provides for
an annual license fee of $10 payable on or before the 1st day
of July of each year, and if not paid until after that date a
penalty of $2.50 is added until the 1st day of January fol-
lowing, after which the penalty is $5 per day for each day's
delinquency.

As to the last provision, it is only necessary to say that
the payment of the annual license fee is exclusively a matter
between the state and the corporation, and a failure to pay
such fee does not in any manner affect the powers or rights
of the corporation as against third persons.   Assuming that
it is incumbent upon a corporation seeking to condemn to
show a compliance with § 1, *supra,* the objection of the peti-
tioner is untenable for several reasons:   First, in its appli-
cation for the writ of review the petitioner avers that the
Northern Pacific Railway Company is a corporation orga-
nized and existing under the laws of the state of Wisconsin
and is authorized to do business as a foreign corporation in
the state of Washington.   This, of itself, shows a compliance
with the statute.   Second, the articles of incorporation of the

Northern Pacific Railway Company were filed in the office of the secretary of state long prior to the passage of the act of 1897; and third, this court will presume, in any event, that the secretary of state performed his duty and did not file the articles of incorporation until the necessary fee was paid.

The next assignment is that the court erred in striking the answer filed in the condemnation proceeding. This court held in *Seattle etc. R. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720, that no answer is contemplated or required in such a proceeding. The defendant may offer any competent proof or establish any defense without answer, and therefore no error can be predicated on the ruling complained of.

The next assignment is that the testimony fails to show that the public interest requires the prosecution of the enterprise set forth in the petition for condemnation. The enterprise in aid of which the appropriation of the petitioner's land is sought is the construction of what is known as the "Tacoma Tide Flat Branch" extending a distance of about three miles from the main line of the Northern Pacific Railway Company at or near Tacoma to a point on Puget Sound. The territory to be served by this branch is about two or three miles in width and from five to six miles in length, and the testimony shows that this entire section is particularly adapted to manufacturing enterprises of various kinds. The petitioner apparently concedes that this branch, when constructed, will be a commercial railway, subject to all the provisions of the constitution and laws of this state governing railway and transportation companies, and that the use is a public one, and this is manifestly true. It is contended, however, that there is at the present time but one manufacturing plant in the territory to be served, and that this is not sufficient to show a necessity for the appropriation or that the public interest will be subserved thereby. We do not think this objection tenable. It clearly appears from the testimony that the territory along this branch is well adapted to manu-

facturing and perhaps to no other purpose. It is a fact of which we may take judicial notice that manufacturing plants do not and cannot locate at a distance from railroad or transportation facilities. No manufacturing plant of any moment would locate on the Tacoma tide flats at a distance of three miles from a railroad, as it would be impossible, or at least impracticable, to get material or supplies to its plant or its products to market; and to hold that the manufacturer must precede the railroad would be in effect to deprive the territory in question of both. The entire history of railroad building shows that the railroad comes first, and that the persons or industries to be served follow after. The question of the right to condemn is determined by the right of the public to use the railroad when constructed, rather than by the extent to which the right will be exercised. As said by the court in *Bridal Veil Lum. Co. v. Johnson,* 30 Ore. 205, 46 Pac. 790, 60 Am. St. 818, 34 L. R. A. 368:

"The fact that it [the railroad] has not been fully completed between the termini indicated in its articles of incorporation, or that there is at present no town, city, or settlement, or other railroad at its proposed southeastern terminus, or that its proposed route is through a rough, mountainous, and sparsely settled country, or that the plaintiff has not yet fully equipped the road, or supplied itself with complete and perfect terminal facilities, or that it has not charged the passengers upon its railroad any fare, does not affect its right to exercise the power of eminent domain. The question of public use is not determined, as a matter of law, by any of these things, but by the fact that the proposed road is intended as a highway for the use of the public in the transportation of freight and passengers. And it can make no difference that its use may be limited by circumstances to a small part of the community. Its character is determined by the right of the public to use it, and not by the extent to which that right is exercised: *De Camp v. Hibernia Railroad Co.,* 47 N. J. Law 43; *Phillips v. Watson,* 73 Iowa 28, (18 N. W. 659); *Ross v. Davis,* 97 Ind. 79. If every one having occasion to use the road as a passenger or for transportation

of freight may do so, and of right may require the plaintiff to serve him in that respect, it is a public way, although the number actually exercising the right is very small. The findings of the court show that the enterprise in which plaintiff is engaged, and for which it requires the land in question, is of this character, and therefore we have no alternative but to affirm the judgment."

In *Butte etc. R. Co. v. Montana etc. R. Co.,* 16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298, the court said:

"It is well established that if, in point of law, a use is public, the fact that not very many persons will enjoy the use is not material: *Talbot v. Hudson,* 16 Gray 417. The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have the right to use it, it is a public highway although the number who have occasion to exercise the right is very small."

We are therefore satisfied that the fact of public use and public necessity was sufficiently established by the testimony.

The last assignment is that the petition for condemnation was insufficient and that the demurrer thereto should have been sustained. We think the petition was clearly sufficient, at least as against a general demurrer.

Finding no error in the record the judgment is affirmed, and to the end that the jury trial pending in the court below may not be further delayed, an order will be entered and certified to the court below forthwith, vacating the supersedeas heretofore granted.

MOUNT, C. J., FULLERTON, HADLEY, CROW, ROOT, and DUNBAR, JJ., concur.