[No. 29277.   Department One.   October 18, 1945.]

JAMES H. CADY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 162 P. (2d) 813.

*F. W. Loomis,* for appellant.

*The Attorney General* and *Harry L. Parr, Assistant,* for respondent.

STEINERT, J.—This was an action to recover upon a claim for workmen's compensation, under the industrial insurance act. The action was ultimately tried in the superior court before a jury. The department of labor and industries and the claimant's employer resisted the action. The jury returned a verdict in favor of the claimant, modifying the decision previously made by the joint board of the department with reference to the claim, and increasing the amount of the award thereon. The claimant, deeming himself aggrieved by the instructions and other rulings of the

court upon the trial as affecting the amount of the verdict, appealed from the judgment finally entered. The claimant will hereinafter be referred to as the appellant. The employer has not appeared upon this appeal, and the department alone will therefore be referred to as the respondent.

At the time involved in this action, appellant, sixty years of age, was employed in a logging operation, which is classified as extrahazardous employment. While falling a tree, on May 20, 1942, he endeavored to disengage a saw and, in so doing, in some manner grasped hold of the under side of the implement. In consequence of his act, a saw tooth penetrated the lower third of the under side of the middle finger of his left hand. Infection followed and appellant was compelled to quit his employment. He did not do any work for a period of about six weeks thereafter, during which time the finger was lanced four times by physicians, and other treatment was regularly given him at a hospital. In the course of this same period, and thereafter, the other fingers of his hand became swollen and partially stiff.

A claim for compensation, filed by the appellant, was recognized by the department of labor and industries and was closed by an order of the supervisor, under date of September 4, 1942, with an allowance of time loss to July 14, 1942, and permanent partial disability in the sum of $71.25. The order of the supervisor was based upon the report of a physician who examined the appellant at the instance of the department and who, in his report, made a finding and rating of permanent partial disability for swelling and ankylosis of the second and third joints of the middle finger, to the extent of thirty per cent of the "amputation value" of the finger at the second joint. No allowance was considered, or made, for any disability of the other fingers or other portions of the hand.

In speaking of the various joints in, or connected with, the fingers, the record refers to the proximal joint, which is the first, or knuckle, joint and is the nearest one to the palm of the hand; the middle, or second, joint; and the distal, or third, joint, which is farthest from the palm.

Upon receipt of the order made by the supervisor, the appellant, through his attorney, in due time made application for a rehearing by the joint board of the department and in his application alleged that, as a result of the accident, he had sustained a permanent disability as to his *hand,* as well as to all the fingers thereof, amounting to "from seventy-five (75) to one hundred per cent (100%)" of the use thereof. The application for rehearing was granted, and a full hearing was held before an examiner for the joint board, upon the testimony of witnesses regularly sworn. The issue toward which the evidence was directed was whether the appellant should be compensated for the injury to his hand as a whole, as contended by the appellant, or whether he should be compensated merely on the basis of an injury to his middle finger, as then contended by the respondent department.

Dr. J. H. Fitz, a physician engaged in general practice for thirty-eight years, was called as a witness for the appellant. His testimony, given at length, was in substance as follows: After obtaining from the appellant a history of the accident and injury, he made a thorough examination of appellant's left hand and arm, and found a badly crippled hand. The middle finger was stiff in the middle and distal joints and partly stiff in the proximal joint. The other fingers also were stiff in the distal and proximal joints, but less so than was the middle finger. There was some motion in the proximal joint of the middle finger, but none in the distal or middle joints of that finger. There was also a limitation of motion in the middle and distal joints of the other fingers. In the hand itself was some atrophy. These conditions were all attributable to the original injury. The middle finger in its present condition is a liability rather than a benefit. Had it been amputated during the early stages of the case, the joints of appellant's other fingers would have had a chance to loosen up, but now, owing to appellant's age, the lapse of time since the injury, and the intervening infection, amputation would be of doubtful value. If the fingers were rated separately, the disability of the middle finger would be one hundred per cent, be-

cause of its utter uselessness; the disability of the other fingers would be at least fifty per cent as to each. However, these injuries to the fingers, as described above, constitute a disability of appellant's entire left hand, to the extent of seventy-five per cent, due to the loss of gripping power which resulted from the stiffness in the various joints of his fingers; appellant can only partially close his hand. In all probability there will be no improvement in appellant's condition as time goes on; rather will there be a deterioration.

Appellant, testifying in his own behalf, described the manner of his receiving his injury, the treatment given him, and the stiffness that has developed progressively in his various fingers during the treatment thereof, and since that time. He testified that owing to his injury he cannot grip anything with his left hand, and that the only use he has of his middle finger is to guide the hand. His occupation throughout his lifetime has been that of a common laborer and carpenter. He now has only about one-fifth the normal use of his left hand.

The respondent called as a witness in its behalf Dr. I. R. Watkins, a physician with forty years' experience. He testified as follows: He attended the appellant a portion of the time during the sufferance of his disability and performed one operation on the middle finger. On the day of the continued hearing before the joint board, February 10, 1943, he again examined the appellant and found that his condition was not as good as it had been at the time of the former examination and treatment. A moderate amount of ankylosis had developed in the other three fingers, attributable to disuse, but which would probably clear up on use of those fingers. There was a moderate amount of ankylosis in the proximal joints of all the fingers, and the distal joint of the middle finger was completely ankylosed. The doctor found no material atrophy of the injured hand. He rated the disability of the middle finger on the basis of amputation value at the middle joint thereof, and, for the condition of the other fingers and the rest of the hand, he

recommended an allowance of a disability of five per cent of amputation value at the wrist.

Dr. Edward B. Riley, a physician of thirty-three years' experience, was then called on behalf of the respondent and testified as follows: He examined the appellant in August, 1942, and made the report upon which the order of the supervisor was based. He reaffirmed his original rating of permanent partial disability, for swelling and ankylosis of the second and third joints of the left-hand middle finger, at thirty per cent of the amputation value of that finger at the second joint.

During the course of the hearing before the joint board, two photographs, taken by a commercial photographer, showing the condition of appellant's hand two days before the hearing, were identified by the photographer and were offered in evidence by the appellant and admitted without objection, after cross-examination by both the department and the employer's attorney.

At the conclusion of the hearing, and after a consideration of the evidence, the joint board, accepting the rating of disability made by Dr. Watkins, entered an order as follows:

"IT IS HEREBY ORDERED THAT the Supervisor's action be and hereby is reversed with instructions to reopen the claim and award a permanent partial disability to the left middle finger equal to 100% of the amputated value of the middle finger *at the second joint* in the amount of $237.50, and award a permanent partial disability of 5% of the amputated value of the left hand at the wrist for the stiffness of all fingers of the hand at the proximal joint, in the amount of $91.20, or for a total award for permanent partial disability to the left hand in the amount of $328.70, less a previous permanent partial disability award of $71.25, or for an additional permanent partial disability award of $257.45, and the claim thereupon closed." (Italics ours.)

It will be observed that the supervisor's order allowed permanent partial disability to the extent only of the swelling and ankylosis of the second and third joints of the middle finger, on the basis of thirty per cent of amputation value of the finger at the second joint; while the order of

the joint board allowed permanent partial disability of that finger to the extent of one hundred per cent of its amputation value at the second joint, and an additional permanent partial disability, for the stiffness of all the fingers at the proximal joints, to the extent of five per cent of the amputation value of the left hand at the wrist. By the joint board's order, appellant was awarded an increase of $257.45, or a total amount of $328.70, for his entire injuries, and the claim was closed by the department on that basis.

Appellant, being dissatisfied with the amount allowed by the order of the joint board, proceeded by way of appeal to the superior court, where the cause was tried before a jury. The net result of the jury's verdict and the judgment thereon was an increase of $28.98 over the amount allowed by the joint board. Deeming himself still aggrieved, because of the limited theory upon which the trial court submitted the cause to the jury and because of other rulings of the court, the appellant has brought the case to this court.

The assignments of error relate to the trial court's action in (1) giving a certain instruction and submitting certain interrogatories to the jury, and refusing to give a requested instruction together with certain requested interrogatories; (2) excluding from the evidence the photographs above mentioned; and (3) refusing to allow a witness fee as part of appellant's cost bill.

The principal assignment of error is directed to instruction No. 10 given by the trial court, the material portions of which read as follows:

"In this case your sole and only duty in arriving at a verdict is to determine the amount of damage *to each one of the fingers as compared with complete amputation of the several fingers at the proximal or first joint of such fingers.* It will be your duty to determine from the evidence in this case and from no other source the proportion which in your best judgment, if any, claimant suffered damage *to each of his several fingers as compared with the amputation of each such several fingers respectively.*

"As to the second finger of the hand, which admittedly suffered an injury, you may allow any percentage thereof

up to 75 per cent, but as to the other three fingers which did not suffer direct injury as a result of said accident you may not allow to exceed 30 per cent of the amputation value." (Italics ours.)

In connection with that instruction the court submitted to the jury two interrogatories, one of which required the jury to find, in terms of percentage, the extent of the injury, if any, to the middle, or second, finger of appellant's left hand, as compared with the injury which would have resulted if the finger had been amputated at the proximal joint, such percentage, however, not to exceed seventy-five per cent of such loss by amputation. The jury's answer to that interrogatory fixed the extent of the injury at seventy-five per cent.

The other interrogatory required the jury similarly to find, in terms of percentage, the extent of the injury to each of the other fingers of that hand, as compared with injuries which would have resulted severally, had each of such fingers been amputated at the proximal joint; in no case, however, to exceed thirty per cent of such loss by amputation. The jury's answer to that interrogatory fixed the extent of that injury at ten per cent for the index finger, and thirty per cent for the third and fourth fingers, respectively.

It will be noted that the theory upon which the trial court submitted the case to the jury by this instruction, and these interrogatories, differed to some extent from the basis upon which the joint board made its award. The joint board allowed for disability to the middle finger an amount equal to one hundred per cent of its amputated value *at the second joint*, and for disability to the other three fingers an amount equal to five per cent of the amputated value *of the hand at the wrist;* whereas, by the instruction and interrogatories of the court, the jury was required to determine the proportionate amount of damage to each of the fingers as compared with complete amputation of the several fingers *at the proximal joint,* without reference to any damage to the hand as a whole.

Appellant duly excepted to the instruction and inter-

rogatories, and his contention now is that, under the evidence, the jury should not have been limited, as it was by the instruction and interrogatories, to a determination of the extent of disability sustained by the appellant in his several fingers alone, but, rather, that the jury should have been permitted to determine whether the disability which he had sustained most closely resembled and approximated a disability resulting from loss of only the fingers, or whether, on the contrary, the disability most closely resembled and approximated a disability which would result from loss of the hand, and, in either event, the extent of the disability. This contention presents the principal question in the case.

Rem. Rev. Stat. (Sup.), § 7675, defines "injury" as a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, *and such physical condition as results therefrom.*

Rem. Rev. Stat., § 7679 [P. P. C. § 705-1] (in effect at the time here involved), provides that each workman who shall be "injured" in the course of his employment shall receive compensation in accordance with the schedule set forth therein. Subdivision (f) of that section defines "permanent partial disability" as

". . . the *loss* of either one foot, one leg, one hand, one arm, one eye, *one or more fingers,* one or more toes, any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability. . . ." (Italics ours.)

For such specified permanent partial disabilities, the same subdivision of that section provides in part that the injured workman shall receive compensation as follows:

"LOSS BY AMPUTATION

| | |
|---|---:|
| "Of the major hand at wrist | $1,920.00 |
| Of index or first finger at proximal joint | 390.00 |
| Of middle or second finger at proximal joint | 300.00 |
| Of ring or third finger at proximal joint | 270.00 |
| Of little or fourth finger at proximal joint | 105.00" |

Lesser amounts are provided for amputation of any of the fingers at the second or the distal joints, respectively.

The statute then continues:

"Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed the sum of two thousand four hundred dollars ($2,400.00): Provided, That for an ankylosed joint the award shall not exceed thirty (30) per cent of the specified amount for the amputation of the member at the disabled joint: And provided, further, That for disability to a member not involving amputation, not more than three-fourths (¾) of the foregoing respective specified sums shall be paid. Provided, further, That payment for any injury to minor hand or arm or any part thereof, shall not exceed ninety-five (95) per centum of the amounts hereinbefore enumerated."

Appellant is right-handed. His injury was therefore to his minor hand, or part thereof.

From a calculation based upon the scheduled amounts provided by the foregoing statute it will be found that, under the trial court's instructions and interrogatories, the appellant could not have been awarded for his injury and disability an amount in excess of $454.50; whereas, by comparison of his disability with a disability involving amputation of the hand at the wrist, he might have been awarded an amount not in excess of $1,368.

From what has been related above, it is clear that there was sufficient evidence in this case to support a finding that the proximal, or knuckle, joints of appellant's left hand were affected by the injury and disability which he sustained.

The "proximal" joints are the connecting joints between the metacarpal bones which constitute the framework of the palm, and the first of the three phalanges of each finger, and are termed "metacarpo-phalangeal" or "phalangeal-metacarpal" joints. A displacement of a metacarpal bone may occur at either end of the bone and may cause injury to the hand, or to the fingers, or to both. See Goldstein and

Shabat, Medical Trial Technique (1942 ed.) pp. 576, 578. By flexing the hand at the knuckles, one can readily see that the movement involves at least one third of the palm of the hand, and affects its gripping power.

While in this case the situs of the original trauma was confined to the middle finger, appellant's evidence was that, because of resulting infection and subsequent stiffening of the various joints of his four fingers, his actual disability involved the entire hand.

As stated in *Henson v. Department of Labor & Industries,* 15 Wn. (2d) 384, 130 P. (2d) 885,

"Disability means the impairment of the workman's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life. It connotes a loss of earning power. [Citing authorities.]"

In the recent case of *Ziniewicz v. Department of Labor & Industries, ante* p. 436, 161 P. (2d) 315, the question involved in the assignment of error now under consideration was fully discussed and squarely decided. In that case, the specific question involved was whether an injury resulting from the fracture of the claimant's ankle, but incapacitating the leg above the knee, could be compensated, under the statute, on the basis of a comparison with a disability resulting from a loss of the leg above the knee. This court said:

"Whether the injury to the ankle caused permanent partial incapacity of the leg below the knee or above the knee, was a question of fact. Under the statute (Rem. Rev. Stat., § 7679), an injured employee is entitled to determination of his compensation according to the percentage which the disability sustained bears to that specified disability which it most closely resembles and approximates in degree of disability. We have frequently held that, in cases of the character of the case at bar, the question as to the extent of the injury sustained is one of fact. [Citing cases.]"

Continuing further, the opinion in that case stated that Rem. Rev. Stat., § 7679, contemplates compensation, not for the wound, but for the disability resultant from the injury, saying:

"If a workman sustains an injury to his foot or to his arm, and as a result of such injury other parts of his body are affected, the injured workman would be entitled to compensation for the total extent of his disability."

So, here, if the appellant sustained an injury to his finger, and as a result of such injury his entire hand was affected, he would be entitled to compensation for the total extent of his injury. There was evidence to support his claim, and hence the instruction given by the court and the interrogatories accompanying it were erroneous in that they deprived the jury of the right and opportunity to determine a question, or questions, of fact with reference to the nature and extent of the disability.

Under this same assignment of error appellant contends that the trial court erred in refusing to give an instruction requested by him and certain interrogatories likewise submitted by him. The requested instruction contained a succinct and accurate statement of the nature of the case, the decision made by the joint board from which the appeal was taken, and the disputed question to be decided by the jury. The instructions given by the trial court did not contain the equivalent of the requested instruction. Under these circumstances, we think the requested instruction should have been given.

The requested interrogatories invoked answers by the jury upon questions of fact as presented by appellant's evidence. Their equivalents were not contained in the interrogatories which were submitted by the court to the jury. The requested interrogatories should have been submitted to the trier of the facts.

Under his next assignment of error appellant contends that the court erred in excluding from the evidence the photographs referred to above. As stated before, the photographs purported to show the condition of appellant's hand shortly prior to the hearing before the joint board, and were admitted in evidence by that tribunal, without objection by the department or by the employer. Respondent's contention is that since appellant would not have been permitted to exhibit his hand to the jury at the trial,

he could not indirectly accomplish the same result by offering in evidence a photograph of his hand.

Regardless of whether or not objection was made to the introduction of the photographs before the joint board, we are clearly of the opinion that they constituted relevant and competent evidence before that tribunal. They tended to show the condition of appellant's hand at the time of the hearing. That was a material factor at the time of that hearing.

. In 32 C. J. S. 614, Evidence, § 711, it is said:

· "Photographs may be admitted to prove the physical condition of a person at a particular time, or the existence, nature, and location of wounds or injuries, where such evidence is relevant, as in an action for personal injuries."

This court has heretofore said that the practice of admitting photographs is to be encouraged as an aid to the comprehension of physical facts, because such evidence usually clarifies some issue and gives the jury, and the court, a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses. *Kelly v. Spokane*, 83 Wash. 55, 145 Pac. 57.

We have also held it to be reversible error to exclude a photograph which gives a fair representation of physical conditions material to the issues involved. *Washington v. Seattle*, 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113.

Other recent cases which demonstrate the admissibility of photographs showing particular physical conditions are: *Farmer v. School Dist. No. 214*, 171 Wash. 278, 17 P. (2d) 899, 115 A. L. R. 1171; *Gephart v. Stout*, 11 Wn. (2d) 184, 118 P. (2d) 801.

█ The basic question involved in the trial before the superior court was whether the decision of the joint board was correct or incorrect. The trial was had upon the departmental record. The photographs were proper parts of that record. The appellant was entitled to have the jury consider all competent evidence contained in the record. Respondent's contention to the contrary is not well founded, and we hold that the exhibits should not have been excluded.

Appellant assigns his final claim of error on the refusal of the trial court to permit, in its formal judgment, the inclusion of the sum of two dollars and twenty cents, as itemized in his cost bill, for the witness fee of Dr. Fitz, who testified at the hearing before the joint board.

Rem. Rev. Stat., § 7697 [P. P. C. § 704-1], provides that, if the decision of the joint board is reversed or modified, the fees of medical and other witnesses and the costs shall be payable out of the accident fund, if that fund is affected by the litigation. The provisions of the statute are met by the circumstances here presented. The item of costs should have been allowed.

The judgment is reversed, with direction to the trial court to grant a new trial and proceed in accordance with the views herein expressed.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.

