[No. 116-40724-1.    Division One.    June 8, 1970.]
Panel 1

KENNETH R. RINGHOUSE, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Slade Gorton, Attorney General,* and *Dinah Campbell Pomeroy, Assistant,* for appellant.

*Jackson, Ulvestad & Goodwin* and *Daniel G. Goodwin,* for respondent.

SWANSON, J.—On January 23, 1965, the claimant, Kenneth R. Ringhouse, sustained an industrial injury to his left little finger which resulted in amputation of the distal joint and the distal half of the second phalanx. In 1937, 28 years

earlier, the claimant had lost his left thumb, index, middle, and ring fingers in a nonindustrial accident. For the 1965 injury to the left little finger, the Board of Industrial Insurance Appeals awarded the claimant 75 per cent of the remaining amputation value of the left minor hand at the wrist, plus an amount equivalent to the amputation value of one-half of the second phalanx, left minor, little finger of the left minor hand. The remaining value was calculated by subtracting from the 1965 value of a whole hand the 1965 value of the thumb, index, middle, and ring fingers.

The trial court said the value of the fingers lost in the prior 1937 nonindustrial injury should be based on their 1937 value rather than the 1965 value used by the board. The trial court then reversed the board only as to the use of the 1965 statutory value of the fingers lost prior to the industrial injury in computing the remaining value of the hand. The Department of Labor and Industries appeals from this judgment.

The department assigns error to the conclusions of law which differed from the board's conclusions only in the use of the 1937 statute rather than the 1965 statute. The department consolidated its assignments of error for argument and stated that the sole issue for determination is the proper method for assessing the remaining value of the hand. Should the 1937 or the 1965 value of the fingers lost prior to the industrial injury be subtracted from the 1965 value of the whole hand?

Both parties agree that RCW 51.32.080(4)[1] applies and requires that the previous disability (the 1937 loss of the thumb, index, middle, and ring fingers) be considered in determining the degree or extent of the increase in such

---

[1]"Should a workman receive an injury to a member or part of his body already, from whatever cause, permanently partially disabled, resulting in the amputation thereof or in an aggravation or increase in such permanent partial disability but not resulting in the permanent total disability of such workman, his compensation for such partial disability shall be adjudged with regard to the previous disability of the injured member or part and the degree or extent of the aggravation or increase of disability thereof." This language is now contained in RCW 51.32.080(3) pursuant to Laws of 1965, Ex. Ses., ch. 165, § 1.

permanent partial disability. The test for determining the extent of permanent partial disability is the loss of bodily function. *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950). In order to determine how much physical function was lost due to Ringhouse's 1937 nonindustrial accident, it is necessary to determine how much physical function he had at the time of the 1965 industrial injury. This is called "remaining value." See *Beyer v. Department of Labor & Indus.*, 17 Wn.2d 29, 134 P.2d 948 (1943). The prior disability must be subtracted from the two combined disabilities in order to determine the extent of the disability due to the industrial injury. *Voshalo v. Department of Labor & Indus.*, 75 Wn.2d 43, 449 P.2d 95 (1968).

Both the board and the trial court found from the only medical evidence in the case, the report of Dr. Noble, exhibit 1,[2]

> that plaintiff's disability resulting from the January 23, 1965 injury should be assessed on the basis of 75% of the loss of the left hand.

Finding 4. From this finding the trial court concluded that the 75 per cent percentage figure represented the total disability existing from both injuries and proceeded to determine "remaining value" by subtracting from the value of the whole hand at the date of the industrial injury, the money value of the thumb, index, middle, and ring fingers as listed in the 1937 statute.

---

[2]"On a person with a normal hand this would not have greatly interferred [sic] with hand function. However, this Claimant had lost the thumb and all of the other fingers of this hand at the age of 17. Consequently the function of his left hand depended entirely upon apposition of the little finger to the thenar eminence. After amputation in the mid-portion of the little finger this apposition was no longer possible (see X-ray taken on Aug. 2, 1966, and compare with one taken Jan. 23, 1965). Consequently he has for all practical purposes lost the use of his left hand. He can no longer do the work that he was doing at the time of the accident.

"I am aware of the Department's principles to be used in rating hand disabilities, but it seems that in this case an exception should be made and that he should be allowed a loss of 75% of the left hand."

The department contends that the use of the 1937 statute, because the fingers were lost in 1937, defeats the policy of compensating workmen equally for the same loss of function caused by the industrial injury. We agree. Respondent claimant candidly admits that the trial court's use of the 1937 statute is erroneous and states in his brief at page 14:

> Both the method of compensation the Department proposed and the one the court chose were erroneous applications of the law for the same reasons (the only difference being that the state deducted the 1965 value of the fingers and the court deducted the 1937 value of the fingers). Each method was incorrect because each deducted from hand value, value of fingers and did not apply the true test of how much hand function was there lacking before and after the industrial injury.

Respondent then argues that the only medical evidence in the case, the testimony of Dr. Noble, n.2, *supra,* states that he should be allowed a loss of 75 per cent of the left hand. The medical report should be interpreted to say, respondent contends, that he is left with a functionless left hand which equals a 100 per cent disability. Respondent further argues that when the doctor said that he should be allowed a loss of 75 per cent of the left hand, the doctor took into account the prior injury and rated the functional disability existing at the time of this industrial injury at 25 per cent. Respondent says that the previous disability sustained in 1937 was a certain loss of function of his left hand which cannot be determined simply by adding up the value of the loss of the fingers. He cites *Cady v. Department of Labor & Indus.,* 23 Wn.2d 851, 162 P.2d 813 (1945), where the trial court was reversed for failing to instruct the jury with reference to damage to the hand as a whole, and limiting the jury to a determination of the extent of disability of the claimant in his several fingers alone.

*Cady* is inapposite. The injured fingers in *Cady* did not involve *specified* permanent partial disabilities. It must be noted that the legislature prescribes dollar values for specific permanent partial disabilities, and these dollar values represent the legislature's determination of the seriousness

of the various losses. RCW 51.32.080(1).[3] Also, the legislature requires that, for permanent partial disabilities *not specifically listed,* the extent of disability must be determined in proportion to that specified disability which most closely resembles the unspecified disability, in terms of percentage loss of bodily function. RCW 51.32.080(2) stated prior to the 1965 amendment:

> Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability, called unspecified disability, shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability,
> . . .

■ Here, the previous disability is amputation of fingers, a specified permanent partial disability with a fixed dollar value. Therefore, the extent of remaining function was properly determined by subtracting the statutory values for the finger amputations from that for the hand. *Beyer v. Department of Labor & Indus.,* 17 Wn.2d 29, 134 P.2d 948 (1943). Respondent advances the argument that the subtraction of amputation values is incorrect because the values of the fingers do not equal the value of the hand. This is fallacious reasoning, for there is more to a hand than fingers, namely, the palm.

Respondent's argument that the testimony contained in Dr. Noble's report would support a finding that his preexisting disability amounted to a 25 per cent loss of function of his hand (with consideration given to the loss of function of the whole hand, not the sum of the individual fingers), *is also without merit.*

In so contending, the respondent overlooks the fact that the board's findings do not include a finding of preexisting disability in terms of percentage loss of hand function.[4]

---

[3] This statute, as amended in 1965, rates amputation values for all fingers at the joint, with the palm. In this rating, the fingers individually equal the total rating.

[4] The workman bears the burden of showing what portion of his disability was caused by the industrial injury. *Allen v. Department of Labor & Indus.,* 48 Wn.2d 317, 293 P.2d 391 (1956).

Neither do the findings of the trial court which respondent's counsel presented and approved. Further, respondent has filed no cross-appeal; he is in no position to claim any error in this respect. CAROA 33; *DeBlasio v. Kittitas,* 57 Wn.2d 208, 356 P.2d 606 (1960); *Waagen v. Gerde,* 36 Wn.2d 563, 219 P.2d 595 (1950).

Respondent explains this situation by stating that the approach used by the trial court was only an alternate theory urged by the respondent at the trial, and that he should not be prevented from requesting this court to adopt the correct theory. The statement of facts reveals that respondent's second theory was accepted to secure a just result and terminate the litigation.

THE COURT: . . .

I am going to adopt Mr. Goodwin's theory. Under all the circumstances and the testimony of the doctor in the record in this case, I feel that that is the just way of disposing of it. In other words, to do it any other way, the state is being enriched at the expense of this claimant.

So, prepare your order.

Even if we were convinced that respondent's theory presented to us is correct, we have no jurisdiction to grant the respondent additional relief when no cross-appeal is taken.

Respondent then states that even though the trial court's judgment was erroneous in utilizing the 1937 statute, it should be upheld because the department was not prejudiced. Respondent, in making this argument, ignores the absence of findings or conclusions made by either the board or the trial court segregating the preexisting disabilities from the 1965 injuries and disability in terms of percentage. No error is assigned to the findings. They are verities on appeal and do not support the conclusion respondent now urges we adopt. There being no findings to support respondent's contention, it cannot be considered.

There being no dispute but that the trial court's judgment in utilizing the 1937 statute is erroneous, the judg-

ment must be vacated and the order of the board reinstated.

JAMES, C. J., and FARRIS, J., concur.

Petition for rehearing denied August 27, 1970.