[No. 1316-1. Division One—Panel 1. September 25, 1972.]

KING COUNTY, *Respondent*, v. SHELDON G. FARR *et al.*, *Petitioners*.

*Powell, Livengood, Dunlap & Silvernale* and *Robert P. Tjossem,* for petitioners.

*Christopher T. Bayley, Prosecuting Attorney,* and *Bruce W. Rudeen, Deputy,* for respondent.

CALLOW, J.—Two property owners, Farr and Monten,

appeal from an order of public use and necessity entered by the Superior Court for King County.

The purpose of the condemnation action, initiated by King County, was to acquire land for Big Finn Hill Park, the construction of which had been generally outlined in a "Park Site Selection Study" prepared in 1963 by the King County Planning Department. This study did not indicate which property would be necessary for the park.

After the Forward Thrust bond issue passed and money was thereby appropriated for the acquisition of Big Finn Hill Park, King County began to delineate the boundaries of the park. Big Finn Hill Park is planned as a "major urban park" as that term is used in the King County comprehensive plan meaning it was to be approximately 100 acres in size with minimal development. Testimony in the record indicated the county wished to acquire all of a ravine containing Denny Creek and other property necessary to provide suitable access, parking and picnic areas. Additional land was necessary to control access to the ravine and to prevent problems with potential water runoff.

A condemnation action consists of three phases: (1) adjudication of public use and necessity, (2) determination of damages to be awarded to the owner and (3) payment of the amount of the award and entry into possession. *State ex rel. Lange v. Superior Court,* 61 Wn.2d 153, 156, 377 P.2d 425 (1963); *State Parks & Recreation Comm'n v. Schluneger,* 3 Wn. App. 536, 538, 475 P.2d 916 (1970).

This appeal relates solely to the first phase.

In *State v. Bank of California,* 5 Wn. App. 861, 491 P.2d 697 (1971), the court at page 864 summarized a trial court's role in a public use and necessity hearing:

> In adjudicating public use and necessity, a trial court must make three separate, but interrelated, findings: (1) the use in question is really a public use; (2) public interests require it; and, (3) the property to be acquired is necessary to facilitate the public use. *Des Moines v. Hemenway,* 73 Wn.2d 130, 437 P.2d 171 (1968); *State v.*

*Dawes,* 66 Wn.2d 578, 404 P.2d 20 (1965); *State ex rel. Sternoff v. Superior Court,* 52 Wn.2d 282, 325 P.2d 300 (1958). A determination that an acquisition is for a "public use" is not precisely the same thing as determining it is a "public necessity," even though the two terms do overlap to some extent and cannot be separated with scalpellic precision. *Des Moines v. Hemenway, supra; King County v. Theilman,* 59 Wn.2d 586, 369 P.2d 503 (1962).

In any event, it is important to distinguish the two, as the trial court must apply different standards of review to each:

> Under the provisions of Const. Art. 1, § 16 (amendment 9) and our interpretation thereof, the issue of whether a proposed acquisition be really for a public use is *solely a judicial question,* although a legislative declaration thereof will be accorded great weight. . . . On the other hand, the issue of whether the contemplated acquisition is necessary to carry out the proposed public use presents a legislative question, and a declaration of necessity by the appropriate legislative body will, by the courts, be deemed conclusive, in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud.

(Footnotes omitted.)

At the close of the county's case, the condemnees moved for dismissal on the basis that there had been no showing that the King County Council had made a determination that acquisition of their property was necessary for the proposed park. The court then took judicial notice of an ordinance passed by the King County Council, the pertinent part of which read as follows:

> An Ordinance authorizing condemnation of property for the Big Finn Hill Park Site.
> BE IT ORDAINED by the King County Council:
> That condemnation proceedings are hereby authorized to acquire property and property rights together with the right to construct and maintain a public County Park on the following described lands in King County, Washington.

King County is authorized by RCW 8.08.010 to condemn property

whenever the board of county commissioners *deems it necessary* for county purposes to acquire such land, real estate, premises or other property, and is unable to agree with the owner or owners thereof for its purchase, . . .

(Italics ours.)

The landowners argue that statutes delegating the state's power of eminent domain must be strictly construed, *Seattle v. State,* 54 Wn.2d 139, 338 P.2d 126 (1959), and that a specific recital of a legislative determination of necessity is therefore required under RCW 8.08.010. The ordinance quoted above does not contain such recital, and the record does not contain the information that was presented to the council prior to enactment of the ordinance.

The Supreme Court of Ohio resolved a similar argument in *Ellis v. Ohio Turnpike Comm'n,* 162 Ohio St. 86, 120 N.E.2d 719 (1954), at 94:

Such petition alleges, one, a fatal defect in the appropriation resolution by its omission to set forth the necessity for appropriating Ellis' land, . . .

As to the first proposition, the very adoption of the appropriation resolution indicates the necessity for the appropriation in the minds of the members of the Turnpike Commission, and the resolution is not fatally defective by omitting to state in terms that the appropriation is necessary.

A condemning authority is not required to set forth the precise reasons for the necessity of taking land in the ordinance which authorizes the condemnation proceeding. *State Parks & Recreation Comm'n v. Schluneger, supra.*

"Necessity," in the eminent domain context, was defined in *Tacoma v. Welcker,* 65 Wn.2d 677, 683, 399 P.2d 330 (1965):

The word "necessary," when used in or in connection with eminent domain statutes, means reasonable necessity, under the circumstances of the particular case. . . . It does not mean absolute, or indispensible, or

immediate need, but rather its meaning is interwoven with the concept of public use (*King Cy. v. Theilman, supra*) [59 Wn.2d 586, 369 P.2d 503 (1962)] and embraces the right of the public to expect and demand the service and facilities to be provided by a proposed acquisition or improvement. *State ex rel. Ami Co. v. Superior Court*, 42 Wash. 675, 85 Pac. 669 (1906); *State ex rel. Jones v. Superior Court*, 44 Wash. 476, 87 Pac. 521 (1906); *State ex rel. Wilson v. Superior Court*, 47 Wash. 397, 92 Pac. 269 (1907); *State ex rel. Patterson v. Superior Court*, 102 Wash. 331, 173 Pac. 186 (1918). Reasonable necessity for use in a reasonable time is all that is required. *Spokane v. Merriam*, 80 Wash. 222, 141 Pac. 358 (1914); *State ex rel. Wenatchee-Beebe Orchard Co. v. Superior Court*, 57 Wn. (2d) 662, 359 P. (2d) 146 (1961).

*See also In re Port of Seattle*, 80 Wn.2d 392, 495 P.2d 327 (1972); *Asotin County Port Dist. v. Clarkston Community Corp.*, 73 Wn.2d 72, 436 P.2d 470 (1968); *In re Port of Seattle*, 72 Wn.2d 932, 435 P.2d 991 (1967). In I. Levey, *Condemnation in U.S.A.* § 14 (1969), it is stated in part:

When private property is taken for a public purpose, the question has frequently been raised as to the necessity of the proposed improvement or more particularly the need of the land of any one owner or group of owners for the improvement. . . . [W]here, . . . the municipality decides to take certain public property for a public park, the owner of the particular property involved may wish to resist the proceedings on the ground not that the park itself is unnecessary but that his property is not necessary to the park, or that the park may better be located elsewhere.

The second question often raised in condemnation proceedings is the "public purpose" for which the property is sought. It is an inherent requirement of any condemnation that before private property can be acquired either by the State or any public corporation that it is for a public use.

. . .

. . . We see, therefore, that the two major problems in a condemnation proceeding, aside from the question of compensation, are those of "necessity" and "public use."

A legislative determination of necessity is entitled to

great weight. In *King County v. Theilman,* 59 Wn.2d 586, 369 P.2d 503 (1962), the court stated at page 595:

On numerous occasions, this court has announced that ". . . The rule is well settled in this state that a declaration of necessity by the proper municipal authorities is conclusive, in the absence of actual fraud *or such arbitrary or capricious conduct as would amount to constructive fraud. State ex rel. Northwestern Electric Co., v. Superior Court,* 28 Wn. (2d) 476, 183 P. (2d) 802 (1947), 173 A. L. R. 1351, and cases cited. . . ." (Italics ours.) *State ex rel. Church v. Superior Court,* 40 Wn. (2d) 90, 91, 240 P. (2d) 1208 (1952).

Similarly, in *In re Port of Seattle,* 80 Wn.2d 392, 495 P.2d 327 (1972), stated at page 398:

A port's determination of *necessity* to condemn property, as distinguished from a determination of *public use,* is conclusive unless a challenger is able to prove actual or constructive fraud. *Tacoma v. Welcker,* 65 Wn.2d 677, 684, 399 P.2d 330 (1965). *Accord, In re Port of Seattle,* 72 Wn.2d 932, 936, 435 P.2d 991 (1967). The burden of proving either fraud or constructive fraud is on the objector. *Medical Lake v. Brown,* 63 Wn.2d 41, 45, 385 P.2d 387 (1963).

*See also Asotin County Port Dist. v. Clarkston Community Corp., supra; State v. Burdulis,* 70 Wn.2d 24, 421 P.2d 1019 (1966); *Tacoma v. Welcker, supra; Medical Lake v. Brown,* 63 Wn.2d 41, 385 P.2d 387 (1963); *State Parks & Recreation Comm'n v. Schluneger, supra;* 1 P. Nichols, *Eminent Domain* § 4.11 (1964).

I. Levey, *Condemnation in U.S.A.* § 15 (1969), contains the following:

It has been uniformly held by the Courts that the necessity and expediency of exercising the power of eminent domain are to be decided by the grantee of the power. It is a well settled principle of the law of eminent domain that the character and quantity of the property to be taken for a public improvement is a matter of determination by the Legislature. The only limitation that the courts have sought to impose upon this prerogative of the legislature is that no more land must be taken than is needed for the particular public improvement. In

many instances, however, this limitation has been abandoned. The determination of what and how much realty is needed for a stated public use is held to be a question primarily reserved to legislative discretion, . . .

(Footnote omitted.)

■ There is no showing of either actual or constructive fraud, and the declaration of necessity, in light of the facts disclosed in the record, is not arbitrary or capricious as those terms were defined in *Tacoma v. Welcker, supra* at 684:

Arbitrary and capricious conduct is willful and unreasoning action, without consideration and regard for facts or circumstances. *Lillions v. Gibbs,* 47 Wn. (2d) 629, 289 P. (2d) 203 (1955). Action, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even though there be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached. *Smith v. Hollenbeck,* 48 Wn. (2d) 461, 294 P. (2d) 921 (1956).

*See also State ex rel. Dawes v. State Highway Comm'n,* 63 Wn.2d 34, 385 P.2d 376 (1963); *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963); *State ex rel. Hunter v. Superior Court,* 34 Wn.2d 214, 208 P.2d 866 (1949). Appellants have failed to prove that the legislative action was taken without consideration of the facts.

The record of the proceedings before the trial court contains ample evidence to support the view that these properties were necessary for the park. The legislative authorization of condemnation proceedings was not arbitrary or capricious. Even if the authorizing ordinance had been defective there is substantial evidence in the record to support the trial court's finding that the acquisition was necessary. Such findings will not be disturbed on appeal.

■ The King County Charter requires due notice be given of a hearing at which an ordinance is adopted. Article 2, section 230.10 of the charter reads as follows:

Proposed ordinances shall be limited to one subject and may be introduced by any councilman or by initiative

petition. At least seven days after the introduction of a proposed ordinance, except an emergency ordinance, and prior to its adoption or enactment, the county council *shall hold a public hearing after due notice* to consider the proposed ordinance. Except as otherwise provided in this charter, a minimum of five affirmative votes shall be required to adopt an ordinance.

(Italics ours.)

The county council pursuant to authorization in article 2, section 220.40 of the King County Charter, enacted ordinance No. 00583 which provides in part:

[T]he County Council shall hold a public hearing after due notice, to consider the proposed ordinance. Due notice shall mean notifying press, radio and television in the County of such public hearing by posting a notice on the bulletin board outside the door of the County Council Chambers, and by such other means as may now or hereafter be required by law.

This procedure was fully complied with in this instance. The landowners additionally asked legal counsel for the county to give them personal notice of the meeting at which an ordinance concerning the necessity of the acquisition would be considered. Legal counsel for the county agreed to do so if possible but was unable to comply. Notice was given in compliance with the charter, and the inability to give additional personal notice does not constitute a lack of "due notice."

The purpose of requiring publication before an ordinance is adopted is to afford an opportunity to parties-in-interest and citizens to be heard on the subject matter and content of the ordinance while the purpose of publication after the passage of an ordinance is to afford the chance to have the ordinance judicially reviewed. *Bruno v. Shrewsbury,* 2 N.J. Super. 550, 65 A.2d 131 (1949). Notice of a hearing on the adoption of an ordinance is not required to be given except as specified in governing constitutional, statutory or charter provisions. *Sweetwater Valley Memorial Park, Inc. v. Sweetwater,* 213 Tenn. 1, 372 S.W.2d 168 (1963); *Houston v. Kirschwing,* 117 Colo. 92, 184 P.2d 487 (1947); 5 E.

McQuillin, *Municipal Corporations* § 16.76 (J. Dray 3d rev. ed. 1969). The notice given was sufficient and appropriate. *See Wood v. Seattle*, 23 Wash. 1, 62 P. 135 (1900).

■ 1 P. Nichols, *Eminent Domain* § 4.103[1] (J. Sackman 3d rev. ed. 1964), states as follows at page 484:

Inasmuch as an owner of land which it is sought to take by eminent domain has no constitutional right to a judicial hearing upon the necessity and expediency of the public improvement for which it is sought to take it, or upon the necessity or expediency of taking his land for such improvement, he has no constitutional right to notice of the proceedings in which it is decided to construct the improvement and its location is determined. Notice in such a case would be futile and is not required, except in the states in which the necessity of a taking is made a judicial question by express constitutional provision.

(Footnotes omitted.)

It is contended that the criteria used in deciding to acquire the Farr property was both illegal and improperly applied. Condemnees argue that the county incorrectly assumed all of the Farr property was within the ravine. These arguments are not borne out in the record. There is evidence to support the view that the county wished to acquire property located within the ravine and property adjacent to the ravine which was not platted or developed. Other considerations including potential picnic areas, parking and protection of the ravine were considered in deciding which property was to be taken. The record does not support the conclusion that the entire property was taken solely to avoid severance damages.

It is similarly argued that the Monten parcels were considered necessary for the park solely because they were of a size and shape that was of no utility to the owners. This is not supported by the evidence. The lack of utility to the owners was one of three criteria utilized in determining whether the Monten parcel was necessary to the park. Acquisition of Monten's property provided park access from an arterial and finally, protected the creek from potentially damaging runoff in the event the land was privately devel-

oped. These factors support the county council's finding of necessity as reasonable rather than arbitrary or capricious.

The condemnees contend that it is insufficient to merely assert that property is to be utilized for park purposes and that a more specific definition of future use is necessary to support a finding of public use and necessity.

 Whether a contemplated use is really "public" is solely a judicial question. *Miller v. Tacoma, supra; Hogue v. Port of Seattle*, 54 Wn.2d 799, 341 P.2d 171 (1959); *State v. Bank of California*, 5 Wn. App. 861, 491 P.2d 697 (1971); A. Jahr, *Eminent Domain* §§ 6, 9 (1953). Under RCW 8.08.020 any condemnation authorized under RCW 8.08.010-.080 is deemed to be for a public purpose when it "is directly or indirectly, approximately or remotely for the general benefit or welfare of the county . . ." A county park is clearly a public use. A. Jahr, *Eminent Domain* § 10 (1953).

The lack of specific plans and the uncertainty of the date on which public use is to commence will not render a condemnation action void. *In re Port of Seattle*, 80 Wn.2d 392, 495 P.2d 327 (1972). The court in *In re Municipality of Metro. Seattle*, 67 Wn.2d 923, 410 P.2d 790 (1966), stated at page 927:

> The test of the sufficiency of the plans to be furnished the owner is whether or not such plans properly and adequately inform the owner of the details of the planned taking so that he and his witnesses may understand exactly the nature of the taking, and evaluate the owner's resultant damages.

*See also State v. Basin Dev. & Sales Co.*, 53 Wn.2d 201, 332 P.2d 245 (1958).

In his oral opinion, the trial court stated as follows:

> I think the thing we have to look at here is, first, whether or not the County had any plans. Entered into evidence are, first of all, the Park Site Selection Study, Exhibit No. 4, and at least Site V-1 indicates pretty definitely that the Denny Park to Big Finn Hill was part and parcel of at least the planning that was done in 1963 by King County. On page five it states:

"In order to meet the future demands for *parks*, acquisition of sites should begin now. Moreover, acquisition should begin as part of a total program to assure the best locations."

Of course, that is tied in with the thoughts that population in King County would definitely expand.

Exhibit No. 3, which is the Comprehensive Plan for King County, Washington, particularly on page 43, states there should be a major urban park, and that is what, apparently, the denomination is here of at least 100 acres in size for every 40,000 potential urban population based on one acre per hundred population. Mrs. Langstaff has testified that it is nowhere a reality yet. The County Council has at least passed a resolution, of which I have taken judicial notice, which at least is an Ordinance stating and authorizing the condemning of property for the Big Finn Hill Park site. The Ordinance itself just states, "To maintain a public County park on the following described lands," setting forth those lands with legal descriptions.

We agree the plans were sufficiently specific.

Condemnees contend that the county has no authority to acquire their fee interest underlying the dedicated streets adjacent to the properties.

We need not concern ourselves with the question of whether the county has the power to condemn land which has been dedicated for county roadways. The county acknowledges it has no intention of vacating these roads at present. The fee underlying the dedicated streets remains with the condemnees. Damages is another question.

The legal description of the Farr property contained in both the petition and the "Order of Public Use and Necessity" was faulty in that it did not close.

■ Property sought to be condemned by a county need only be described with "reasonable certainty" in the petition. RCW 8.08.010.

The legal description contained in the order of public use and necessity, however, should be accurate. *Chehalis v. Centralia*, 77 Wash. 673, 138 P. 293 (1914), and the order

must be amended so as to accurately disclose the property to be taken.

Error is assigned to the admission of two maps offered by the county. It is contended that the county failed to lay a proper foundation as to their authenticity and accuracy.

The maps were identified by an engineering technician for the King County Park Department. The technician had marked certain areas on contour maps obtained from the Department of Public Works. The marked areas demonstrated the approximate location of the property belonging to appellants in conformance with the legal descriptions of that property. He did not have personal knowledge of the preparation of the contour maps other than that the maps were normally used in the engineering procedures of the Department of Public Works and that he had been told by someone in that department how they had been prepared. He testified that he determined the location of the parcels he outlined upon the contour maps by measuring from assessor's maps of the same area. He had no firsthand knowledge of the assessor's maps but believed they were accurate within the margin of error to which he was able to draw the parcels.

The use of demonstrative evidence is to be encouraged. *State v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961); *Cady v. Department of Labor & Indus.,* 23 Wn.2d 851, 162 P.2d 813 (1945). The admission of photographs lies within the discretion of the trial court. *Toftoy v. Ocean Shores Properties, Inc.,* 71 Wn.2d 833, 431 P.2d 212 (1967), and the same is true of maps and diagrams. *See generally* 5 R. Meisenholder, Wash. Prac. § 32 (1965).

■ Here the trial was to the court, and he was fully aware of the limits of the accuracy of the drawings. It is not error to offer a map as illustrative evidence, to help the trier of facts in understanding other testimony, where the trier of fact is aware of the limits of accuracy of the exhibit. *Ingersoll v. Olwell,* 127 Wash. 276, 220 P. 775 (1923). *See also Bradshaw v. Seattle,* 43 Wn.2d 766, 264 P.2d 265,

42 A.L.R.2d 800 (1953); *Schwede v. Hemrich,* 29 Wash. 124, 69 P. 643 (1902); Annot., 9 A.L.R.2d 1044 (1950).

The identification of a map as accurate, while necessary, need not be by the person who drew it. *Portland & S. Ry. v. Clarke County,* 48 Wash. 509, 93 P. 1083 (1908); *Portland & S. Ry. v. Ladd,* 47 Wash. 88, 91 P. 573 (1907).

This is not a case where no evidence was offered as to the accuracy of the exhibit and where no person with knowledge of its content was available for cross-examination. *San Juan County v. Hage,* 54 Wn.2d 419, 341 P.2d 872 (1959). Nor where conditions had changed so as to render the map inaccurate. *Hall v. King County Fire Dist. 43,* 67 Wn.2d 446, 408 P.2d 14 (1965).

The value of maps such as those in question was recognized in *Department of Pub. Works & Bldgs. v. Chicago Title & Trust Co.,* 408 Ill. 41, 51, 95 N.E.2d 903 (1950), *cert. denied,* 341 U.S. 931, 95 L. Ed. 1360, 71 S. Ct. 804 (1951):

> In the second class of errors raised by appellants, it is contended that the court erred in admitting certain exhibits into evidence, in admitting evidence as to other sales, in allowing direct testimony in rebuttal, and in its instructions to the jury. The exhibits complained of were three contour maps which had been colored in certain areas with crayons and were used by appellee's witnesses to show what portions of appellants' property were under water, what portions might be subject to flood from the Dead River, and what portions of the property were on or above the feasible building plane. Uncolored contour maps of the same areas had previously been introduced into evidence, and it is appellants' contention that the colored maps were merely self-serving exhibits which had the effect of unduly enlarging the testimony given by appellee's witnesses. Plats, photographs, drawings and diagrams, which illustrate the subject matter of testimony, may be received into evidence for the purpose of showing a particular situation, explaining the testimony or enabling the jury to apply the testimony more intelligently to the facts shown. (*Smith v. Sanitary Dist.,* 260 Ill. 453 [103 N.E. 254].) All of the data shown by the colored exhibits were matters to be taken into consideration by the jury in a case of this nature. We do not see

614

that they did more than explain testimony of a somewhat technical nature and assist the jury in its determination of the facts. The court did not abuse its discretion in allowing the exhibits into evidence.

The maps were properly admitted.

The case is remanded to correct the erroneous legal description in the "Order of Public Use and Necessity" and to reflect the county's position on appeal that the fee ownership underlying the roads in question is not to be condemned. In all other respects the judgment of the trial court is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied October 31, 1972.

Review denied by Supreme Court December 15, 1972.