[No. 36136.    Department One.    March 1, 1962.]

KING COUNTY, *Plaintiff*, v. JACK THEILMAN, *Defendant and Relator*, THE SUPERIOR COURT FOR KING COUNTY, *Theodore S. Turner, Judge, Respondent.*[*]

[*] Reported in 369 P. (2d) 503.

*Maslan, Maslan & Hanan,* by *Ben A. Maslan,* for relator.

*Charles O. Carroll,* by *Dominick V. Driano,* for respondent.

WEAVER, J.—This is a condemnation proceeding, authorized by the Board of County Commissioners of King County, to acquire land owned by relator.

By writ of certiorari, relator presents for our review an order of the trial court determining that the right of way " . . . sought to be appropriated and used is really and in fact a public use . . ."

■ The law applicable to respondents' motion to quash the writ is so intertwined with the law pertaining to the merits of the cause that we deny the motion and proceed to a consideration of the merits. See *First Nat. Bank of Everett v. Tiffany*, 40 Wn. (2d) 193, 242 P. (2d) 169 (1952).

A chart best portrays the factual situation.[1]

The relator, Jack Theilman, owns a 13-acre tract of land, labeled "R," that has approximately 455 feet of frontage on the south side of the Issaquah-Newport Road. On the east, his property adjoins a 36-acre tract, "A-B-C-D," owned by the Highland Development Company of which Ben A. Van Etten, Sr., is president. The 36-acre tract has no frontage on the Issaquah-Newport Road; however, the Highland Development Company owns lots 8 and 9 of the Martindale Addition, "A-H-J," that are contiguous to the northern boundary of "A-B-C-D" at its northwest corner. Thus, the Highland Development Company has approximately 400 feet of frontage on the highway.

Originally, the Highland Development Company filed a comprehensive plan that proposed a plat of its entire 36-acre tract, plus lots 8 and 9 of the Martindale Addition. The plat extended S.E. 42nd Place east and west; the western end curved to the north through lots 8 and 9 to provide access to the Issaquah-Newport Road, as indicated by "K." The proposed plat was approved by the County Engineer's office and the King County Planning Commission.

The northeast portion of the development company's tract was later platted as Cougar Hills Division No. 1. The remainder of the tract is still unplatted, except that S.E. 42nd Place is designated as extending in a straight line through the unplatted portion to the common boundary of the Highland Development Company's tract and relator's land.

The purchase of that portion of relator's property needed to extend S.E. 42nd Place to the Issaquah-Newport Road (the shaded area on the chart, *supra*) did not materialize.

---

[1] Chart drawn by the court from exhibits and testimony. Not drawn to scale.

In its petition for condemnation, the county asked the court to find that the property " . . . is required and *necessary* for a public use . . . " (Italics ours.)

At the trial, the county presented its case upon the theory of public use and *"necessity."*

After all of the evidence had been produced, counsel for the county was confronted with a dilemma arising from the following:

(a) Although Mr. Van Etten denied that this action was commenced by the county at his request, the assistant county engineer testified:

" . . . and I think it is realistic to say that Mr. Van Etten requested that we assist him in this acquisition.

"As a matter of fact, I think there is correspondence to that effect, that he requested that we assist him in this acquisition because he was unable to reasonably negotiate with Mr. Theilman for this property."

He further testified:

"A. Well, at the present time we do not have any funds budgeted for the construction of this road with County forces, with County funds."

(b) The cost of the possible condemnation award to relator was to be paid by the Highland Development Company if "within reason."

Mr. Van Etten also testified:

" . . . We can't pay for it if it was far in excess, because we can always chop this road off right here. [He was apparently referring to S.E. 42nd Place where it meets the west line of 'A-B-C-D'.]

" . . .

"If the county would let us we can chop it off right here, same as we would on these—Southeast 43rd Street and Southeast 44th we have chopped off right here. [On the proposed comprehensive plan, these two streets lie south of S. E. 42nd Place and terminate at the west line of 'A-B-C-D'.]"

(c) The cost of construction of the proposed road across relator's land was to be paid by the Highland Development Company.

(d) The record is replete with evidence to support the conclusion that the Highland Development Company could build an equally satisfactory extension of S.E. 42nd Place over either of two routes across its own lots 8 and 9 of the Martindale Addition to the Issaquah-Newport Road. The first route, as approved by the County Planning Commission and the County Engineer's office on the developer's preliminary comprehensive plan, is designated "K" on the chart, *supra*; the second is illustrated by "L" on the chart, *supra*. In reference to the latter route, the company's president testified on cross-examination:

"Q. That might hurt some of your proposed lots, might it not? A. It would definitely hurt plenty, that is right."

(e) Prior to taking the case under advisement, the trial court stated:

" . . . I am of the opinion that if the court has the power to pass on the necessity of the land in question for the purpose of establishing a connecting road from Southeast 42nd Place to Newport Way, *I would have to find against the necessity of the property of the defendant here.* It could be said to be necessary *only* if we start out with the assumption that the interested party initiating this improvement with the County Commissioners should be held entitled to preserve all his building lots without sacrifice. If you are going to have a straight road on Southeast 42nd Place and keep all the building sites, both north and south of the proposed road, intact, then you have got to go across the defendant's property to get a satisfactory grade. But I don't think that is necessary. I don't think you have to spoil a nice piece of property like the Theilman property here in order to provide a satisfactory grade when by changing the route slightly and putting in a cut and a turn on the Van Etten [Highland Development Company] property you can get an equally satisfactory road with an equally satisfactory grade. . . ." (Italics ours.)

The dilemma was apparent: Either the county's action must be dismissed because it failed to prove that the taking of relator's property was "necessary," or the county must prevail on its contention that it was not the function of the court to pass upon the question of "necessity." Counsel for

the county chose the latter horn; he moved for a trial amendment, deleting the allegation of "necessity" from the condemnation petition, and waived the request for "an order of public necessity."

The trial judge isolated one of the questions of law presented by this review when he said:

" . . . If an order of necessity is still necessary under the 1949 Act then your motion [by the County] would not be well taken and to grant it would put the county out of court."

The trial court granted the county's motion to delete a finding of "necessity"; hence, the order that was entered, which is now under review, determines that the property sought by the county is for a "public use." The order is silent, however, as to "necessity" except to recite that the Board of County Commissioners found relator's property to be "necessary." Inherent in the decision of the trial court is the conclusion that, under the applicable statutes, it did not have the power to pass upon the question of the "necessity" of taking relator's land in support of a public use.

The right of an individual to own, use, and enjoy private property is basic in our philosophy of government. Absent nonpayment of taxes, maintenance of a public nuisance, constitutional rights, or police power, ownership may be disturbed only by the sovereign, for the power of eminent domain is an attribute of sovereignty. It is an inherent power of the state; not derived from, but limited by, the fundamental principles of the constitution.

The pertinent provision of the Washington Constitution is amendment 9 to Art 1, § 16:

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made . . . Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined

as such, without regard to any legislative assertion that the use is public: . . ."

■■■ Before the *state* may condemn private property, the proper authority must find that its acquisition is ". . . deemed *necessary* for the public uses of the state . . ." (RCW 8.04.010) (Italics ours.), and the court must determine that its acquisition ". . . is really *necessary* for the public use of the state, . . ." RCW 8.04.070. (Italics ours.)

In *State ex rel. Sternoff v. Superior Court*, 52 Wn. (2d) 282, 325 P. (2d) 300 (1958), a condemnation action by the state, this court held that under RCW 8.04.070 there must be three basic findings before land can be condemned for public use: (1) that the use is really a public use; (2) that the public interests require it; and (3) that the property appropriated is necessary for the purpose. See *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 7, 76 P. (2d) 990 (1938).

The legislature gave *counties* the right to acquire private property by eminent domain when the Board of County Commissioners ". . . deems it *necessary* for county purposes . . ." RCW 8.08.010. (Italics ours.)

Upon a hearing, if the court

". . . shall be . . . satisfied by competent proof that the contemplated use for which the lands . . . sought to be appropriated is a public use of the county, the court or judge thereof may make and enter an order adjudicating that the contemplated use is really a public use of the county, . . ." RCW 8.08.040 (Laws of 1949, chapter 79, § 4).

In view of our constitutional provision, quoted *supra*, we do not believe there is any difference between RCW 8.04.070, requiring the court to find that land acquisition ". . . is really *necessary* for the public use of the state, . . ." and RCW 8.08.040 requiring the court to find ". . . that the contemplated use is really a public use of the *county* . . ." (Italics ours.) See *State ex rel. Flick v. Superior Court*, 144 Wash. 124, 257 Pac. 231 (1927); *State ex rel. McPherson Bros. Co. v. Superior Court*, 148

Wash. 203, 268 Pac. 603 (1928) (Condemnation by counties); *State ex rel. Tacoma School Dist. No. 10 v. Stojack*, 53 Wn. (2d) 55, 64, 330 P. (2d) 567, 71 A. L. R. (2d) 1064 (1958), and cases cited.

We cannot believe that the legislature intended a requirement that the state could not maintain an action for eminent domain without proving "necessity" to the satisfaction of the court; and, at the same time, intended a delegation of the power of eminent domain to a political subdivision without such requirement.

Although not determinative, we recognized this conclusion in *Public Util. Dist. No. 1 v. Washington Water Power Co.*, 43 Wn. (2d) 639, 641, 262 P. (2d) 976 (1953), when we said:

"Although there are minor differences in the various procedural statutes, as they apply to the several types of authorities empowered to exercise the right of eminent domain (the statutes are collected in *State ex rel. Mower v. Superior Court, supra* [43 Wn. (2d) 123, 128, 260 P. (2d) 355 (1953)]), all of the statutes embrace the same procedural theory, namely, a completed action of eminent domain requires the entry of three separate and distinct judgments during the course of the proceeding. [Citing authorities.]

"*The first is a decree of public use and necessity.* It is a judicial question whether the contemplated use be really public. Washington Constitution, Amendment No. 9. The second is a judgment fixing the amount of the award. The third is the final decree transferring title. . . ." (Italics ours.)

■ The words "public use" are neither abstractly nor historically capable of complete definition. "Public use" and "necessity" cannot be separated with scalpellic precision, for the first is sufficiently broad to include an element of the latter. Can it be said that a "contemplated use" that does not include an element of "necessity" meets the constitutional mandate that it "be really public"? We think not.

■ The constitutional provision that " . . . the question whether the contemplated use be really public shall

be a judicial question . . . ." does not preclude the prerogative of a legislative or administrative body from declaring a public use in the first instance, and its declaration ". . . is entitled to great weight . . . ." (*Hogue v. Port of Seattle*, 54 Wn. (2d) 799, 817, 341 P. (2d) 171 (1959)); however, whether ". . . the contemplated use be really public . . . ." is solely a judicial question and ultimately must be decided by the court. *Hogue v. Port of Seattle, supra; State ex rel. Andersen v. Superior Court*, 119 Wash. 406, 205 Pac. 1051 (1922); *Public Util. Dist. No. 1 v. Washington Water Power Co.*, 43 Wn. (2d) 639, 262 P. (2d) 976 (1953); *State ex rel. Dungan v. Superior Court*, 46 Wn. (2d) 219, 279 P. (2d) 918 (1955).

On numerous occasions, this court has announced that

". . . The rule is well settled in this state that a declaration of necessity by the proper municipal authorities is conclusive, in the absence of actual fraud *or such arbitrary or capricious conduct as would amount to constructive fraud. State ex rel. Northwestern Electric Co., v. Superior Court,* 28 Wn. (2d) 476, 183 P. (2d) 802 (1947), 173 A. L. R. 1351, and cases cited. . . ." (Italics ours.) *State ex rel. Church v. Superior Court*, 40 Wn. (2d) 90, 91, 240 P. (2d) 1208 (1952).

As a general rule, it must be conceded that the acquisition of private property for the purpose of constructing and maintaining a public highway is for a "public use," within the meaning of the constitution and RCW 8.08.020. Inherent, however, in the determination of public use of a piece of property sought to be taken, is an element of public necessity. The rule must be applied to the facts of each case.

We find the facts of the instant case bizarre, if not unique. From the record, it is apparent that the Highland Development Company could not have condemned relator's property as a private way of necessity; the company had highway frontage and two feasible ways of approach. Though we do not think the county's participation in taking relator's property by eminent domain is a cloak to cover

private objectives, the effect of this action is to allow a private party to do indirectly that which the law prevents him from doing directly. The ultimate effect is to allow a neighboring land developer to take private property for a private use. This action is the county's in name only. It had no funds budgeted either to acquire relator's land or to build the road across it.

The record cannot support a conclusion that public use and necessity require condemnation of relator's property; hence, the action of the Board of County Commissioners was sufficiently arbitrary and capricious to "amount to constructive fraud."

The judgment is reversed.

FINLEY, C. J., HILL, FOSTER AND HUNTER, JJ., concur.