[No. 328-3.    Division Three.    August 3, 1971.]

THE STATE OF WASHINGTON, *Petitioner*, v. W. KENNETH KINGMAN *et al., Respondents*.

*Slade Gorton, Attorney General,* and *John J. Champagne, Assistant,* for petitioner.

*H. B. Hanna* (of *Murray & Hanna*), for respondents.

GREEN, J.—This matter was previously before the Supreme Court in *State v. Kingman,* 77 Wn.2d 551, 463 P.2d 638 (1970) where the trial court's order denying a petition for public use and necessity was set aside because of the failure to enter findings of fact. The case was remanded for further proceedings. Thereafter, findings of fact and conclusions of law were entered, together with an order denying the state's petition for public use and necessity. The Supreme Court granted a writ of certiorari to review these matters and assigned the case to this division.

This action was commenced to condemn fee title to property overlooking Lake Chelan for the purpose of preserving a scenic viewpoint in its natural state. The viewpoint adjoins state primary Highway 10 (sign route 97) that runs along the southerly shoreline of Lake Chelan in the vicinity of Lakeside. It has an overall length of about 3,800 feet, of which 300 feet is sought to be acquired in fee from

respondents. The property in question lies between the highway and the lake, there being an almost vertical drop of 25 feet to the lake. Respondents also own property across the highway from the lake. Respondent Paul Burkey testified he purchased the property for the purpose of selling lots and in connection therewith furnishing a condominium dock on the lake within the area sought in this proceeding. He also said there are no plans for building anything that would rise above the level of the highway. The speed limit on the highway at this point is 60 miles per hour.

Terrance Burke, project engineer for the Department of Highways in the Wenatchee area, testified:

> We are attempting to preserve the landscape as it is, the natural landscape, with the lake as the principal viewpoint and to maintain the shorelands along this stretch of the highway so that they will remain as much as possible in a natural state.

In response to a question suggesting it would not be necessary to take title to the shoreland if there was no development which would obstruct the view, Burke testified:

> Well, if it were solely the view that we wished to preserve, restrictions that would preserve just the view of the lake, that is true. But also the thing that wants to be preserved is not only just the view of the water, the fact that the traveling public would be able to see the water, but also the control of what would be developed on the shore that would also be viewed from this spot. In other words, the view could be preserved but someone could possibly have an improvement put on it that would not be compatible at all with the view of the lake itself. . . . I believe it is the feeling of the department that this stretch of lakeshore, approximately 3800 feet long, is one of the few areas that are not improved and it is the desire of the department to acquire this strip before it is improved so that this view from the highway is preserved as it is. That is the intent of the acquisition so that there are not improvements placed on it and docks placed on it and outbuildings placed on it so it can be maintained as it is.

Again, he testified:

> The intent in establishing this area was to not have shore improvements, to preserve it as it is, and if that policy

were to be changed I don't have the right to say what it would be. . . . There could be other areas along the lake . . . that are now undeveloped, but as a practical thing they are too small to really add as much to the preservation of the view. In this case it is a long stretch of lakeshore that is presently undeveloped primarily and the reason the department seeks to acquire this is to preserve it this way.

He also stated it was the department's general policy in acquiring areas for preservation of natural scenery to acquire and preserve such areas in their natural state.

Evidence was produced showing respondents offered an easement to the state for the viewpoint, reserving to themselves the right to construct a condominium dock. The evidence also showed the Chelan County PUD and the town of Chelan, owners of property in the viewpoint area, adopted resolutions expressing their willingness to cooperate in the beautification of the viewpoint; however, these resolutions were not binding upon subsequent governing officers and did not prohibit a conflicting future use of the property.

The trial court found that (1) it was not necessary for the state to acquire fee title to the property, but rather should have accepted respondents' offered easement reserving the right to construct a condominium dock of such height as not to obstruct the view; (2) such dock would not prejudice the scenic view but would in fact enhance the same; and (3) it is arbitrary and capricious to require a fee acquisition from respondents while accepting nonpermanent resolution easements from the PUD and the City of Chelan. Accordingly, the petition for public use and necessity was denied. In doing so, we believe the trial court committed error.

■ The acquisition in this case is authorized by RCW 47.12.250. It provides:

The state highway commission is authorized to acquire by . . . condemnation . . . title to or any interests or rights in real property adjacent to state highways for the preservation of natural beauty, historic sites or viewpoints . . .

The administrative selection of lands necessary to carry out a public purpose is conclusive in the absence of a showing of bad faith, or arbitrary, capricious or fraudulent action. *State v. Burdulis,* 70 Wn.2d 24, 25, 421 P.2d 1019 (1966). Where there is room for two opinions, the action of the agency is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. *Miller v. Tacoma,* 61 Wn.2d 374, 390, 378 P.2d 464 (1963).

From the record it is evident that conflicting opinions may be held on the issue of whether fee title to the property should be acquired. The state contends that in order to preserve the viewpoint in a natural state, it is necessary to maintain complete control of any development in the lake that would affect the natural view. This contention is emphasized by respondents' asserted intention to build a condominium dock. On the other hand, respondents contend a dock will not disturb the natural beauty of the area. We believe both of these opinions may upon due consideration be honestly held. In that situation the opinion of the highway commission must prevail and is not arbitrary or capricious. *Miller v. Tacoma, supra.*

Likewise, the trial court's conclusion the commission acted arbitrarily in requiring a fee interest be taken from respondents while accepting a tenuous resolution from the City of Chelan and the PUD was erroneous. Neither of these public bodies were threatening to do any act inconsistent with the development of the viewpoint; in fact, the resolutions offer their cooperation. If either the city or the PUD do threaten an act inconsistent with the maintenance of the viewpoint in its natural state, the power of eminent domain can be exercised by the state to acquire their fee interest. In accepting the cooperation offered in the resolutions rather than exercising at this time their power to condemn is a judgment resting in the sound discretion of the highway commission. Respondents' threatened inconsistent act by way of construction of a condominium dock

required the commission to condemn a fee interest to preserve the purposes of the project.

Accordingly, the judgment is reversed and remanded for further proceedings.

MUNSON, C.J., and EVANS, J., concur.