[No. 585-2.     Division Two.     December 3, 1971.]

THE STATE OF WASHINGTON, *Petitioner*, v. THE BANK OF CALIFORNIA *et al., Respondents.*

*Slade Gorton, Attorney General,* and *Roger A. Gerdes, Assistant,* for petitioner.

*Paul Sinnitt,* for respondents.

PEARSON, J.—This matter is before us on a writ of certiorari to review the denial of an order adjudicating public use and necessity to a 50 by 1,350 foot strip of land in

Pierce County. Petitioner, represented by the Highway Department, sought initially to condemn 11.80 acres of respondents' 18.26-acre tract for the purpose of constructing a diamond interchange on State Route 16 near Gig Harbor. The order was granted for all land except the narrow disputed strip. Referring to the unscaled sketch on page 863, respondents' tract is located within dotted lines, generally east of State Route 16. The unshaded area within the dotted lines is not to be condemned and is presently covered with trees. The Olympic Village Shopping Center, in private ownership, is adjacent to that tract and generally between the tract and the highway. Part of the 11.80-acre taking is to be used to reroute an existing 100-foot-wide Tacoma City Light right-of-way around the interchange. In the original plan, the power line was to run along the eastern boundary of respondents' tract, which also borders on the Rushmore residential area. Pursuant to demands from Rushmore residents and other citizens at the access hearing,[1] the Highway Department reviewed its plan and concluded that the power line could be moved 50 feet closer to the interchange and a 50 by 1,350 foot strip of trees presently on the land could remain between Rushmore and the power lines and interchange. (See sketch.)

At the hearing on public use and necessity, respondents objected to condemnation of the 50 by 1,350 foot strip, claiming that it would be an unconstitutional condemnation for a private purpose and that the change in plans had demonstrated that the strip was not needed for the interchange development. The trial court agreed with this contention and denied condemnation, finding that the *sole* purpose for taking the strip was for a private interest, *i.e.*, to act as a screen for the Rushmore residents.

The state contends that condemnation of the disputed strip was proper under RCW 47.12.250,[2] which statute al-

---

[1] Petitioner admits the demands initiated the review.

[2] RCW 47.12.250 provides: "The state highway commission is authorized to acquire by purchase, lease, condemnation, gift, devise, bequest, grant or exchange, title to or any interests or rights in real property adjacent to state highways for the preservation of natural beauty,

UNSCALED SKETCH OF HIGHWAY DEPT. PLAN
(Not offered as an exhibit)

lows condemnation of real property adjacent to state highways for preservation of natural beauty, establishment of

historic sites or viewpoints or for safety rest areas or to provide a visual or sound buffer between highways and adjacent properties: *Provided,* That the state highway commission shall not acquire, by condemnation, less than an owner's entire interest for providing a visual or sound buffer between highways and adjacent properties under RCW 47.12.010 and 47.12.250 if said owner objects to the taking of said lesser interest or right."

visual or sound buffers, and so forth. We do not question the legislature's constitutional authority to provide for such condemnations. In an era when proper land use is a great concern for an ecology-minded populace, granting the Highway Commission authority to integrate construction and ecological demands through the incorporation of green belts and tree buffers is highly desirable. Also, we do not feel RCW 47.12.250 must be limited to the functional aspect of highway travel, without considering the esthetic desires of the highway user and the public at large. Nevertheless, in applying the judicial test of public use and necessity applicable in this case, we must affirm the trial court's determination that a public purpose was lacking.

■ In adjudicating public use and necessity, a trial court must make three separate, but interrelated, findings: (1) the use in question is really a public use; (2) public interests require it; and, (3) the property to be acquired is necessary to facilitate the public use. *Des Moines v. Hemenway,* 73 Wn.2d 130, 437 P.2d 171 (1968); *State v. Dawes,* 66 Wn.2d 578, 404 P.2d 20 (1965); *State ex rel. Sternoff v. Superior Court,* 52 Wn.2d 282, 325 P.2d 300 (1958).[3] A determination that an acquisition is for a "public use" is not precisely the same thing as determining it is a "pub-

---

[3]There appears to be some confusion in the cases as to whether the leading case of *State ex rel. Sternoff v. Superior Court, supra,* was interpreting RCW 8.20.070, relating to condemnation by corporations (*see State ex rel. Wenatchee-Beebe Orchard Co. v. Superior Court,* 57 Wn.2d 662, 359 P.2d 146 (1961)), or RCW 8.04.070, relating to condemnation by the state. (*See King County v. Theilman,* 59 Wn.2d 586, 369 P.2d 503 (1962).) RCW 8.04.070 is the applicable statute in our case:

At the time and place appointed for hearing the petition, or to which the hearing may have been adjourned, if the court has satisfactory proof that all parties interested in the lands, real estate, premises or other property described in the petition have been duly served with the notice, and is further satisfied by competent proof that the contemplated use for which the lands, real estate, premises, or other property are sought to be appropriated is really necessary for the public use of the state, it shall make and enter an order, to be recorded in the minutes of the court, and which order shall be final unless review thereof to the supreme court of the state is taken within five days after entry thereof, adjudicating that the contemplated use for which the lands, real estate, premises or other

lic necessity," even though the two terms do overlap to some extent and cannot be separated with scalpellic precision. *Des Moines v. Hemenway, supra; King County v. Theilman,* 59 Wn.2d 586, 369 P.2d 503 (1962).

In any event, it is important to distinguish the two, as the trial court must apply different standards of review to each:

Under the provisions of Const. Art. 1, § 16 (amendment 9)[4] and our interpretation thereof, the issue of whether a proposed acquisition be really for a public use is *solely a judicial question,* although a legislative declaration thereof will be accorded great weight. . . . On the other hand, the issue of whether the contemplated acquisition is necessary to carry out the proposed public use presents a legislative question, and a declaration of necessity by the appropriate legislative body will, by the

---

property are sought to be appropriated is really a public use of the state.

Even though the 3-pronged test in *State ex rel. Sternoff v. Superior Court, supra,* more closely resembles the language of RCW 8.20.070, we feel the procedural determinations enunciated in that case apply to all authorities empowered to exercise eminent domain. *See King County v. Theilman, supra.* Most cases have cited the three requirements without distinguishing between the statutes. *State v. Hatchard,* 49 Wn.2d 442, 302 P.2d 478 (1956); *State v. Slater,* 51 Wn.2d 271, 317 P.2d 519 (1957); *State ex rel. Lange v. Superior Court,* 61 Wn.2d 153, 377 P.2d 425 (1963); *State v. Dawes,* 66 Wn.2d 578, 404 P.2d 20 (1965); *Des Moines v. Hemenway, supra.*

⁴"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: Provided, that the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use."

courts, be deemed conclusive, in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud.[5]

(Italics ours.) *Tacoma v. Welcker,* 65 Wn.2d 677, 684, 399 P.2d 330 (1965). *See also, Des Moines v. Hemenway, supra.*

The issue in this case is not one of necessity (*i.e.,* the Highway Department's selection of which land to condemn) but rather one of public use. As that issue is solely a judicial question, our function on appeal is to determine whether there was substantial evidence for the finding that the sole purpose for taking the 50-foot strip was to benefit private property owners. It is our opinion that there was substantial evidence to that effect.

In our view, the state failed to establish that the 50-foot strip, covered with trees, would benefit the motoring public on State Route 16. The view of the trees for southbound traffic would be greatly obstructed by the Olympic Village Shopping Center, which is in private ownership. The angle northbound motorists would be traveling makes it impossible for them to get more than a brief glimpse of the trees. A 21-foot fill will exist at the overpass, and a park is already in existence adjacent to 375 feet of the disputed strip which, presumably, provides some natural beauty of its own. Furthermore, according to the map exhibits, it is approximately 400 feet from the highway to the southeast corner of the strip, and approximately 650 feet from the highway to the nearest point on the strip adjacent to which houses are scheduled to be built.

Admittedly, travelers on the access and crossover roads (BR2 and A2 lines, on sketch) would be closer to the trees and would view them for a longer period of time. There is nothing in the testimony, however, to indicate the Highway Department wished to establish a green belt for these motorists. Furthermore, there has been no plan or overall design presented for other green belts from which

[5]The same test would apply to an administrative selection of lands necessary to carry out a public purpose. *State v. Kingman,* 5 Wn. App. 487, 487 P.2d 780 (1971).

we might conclude motorists on these arterial routes were taken into consideration. It was not established that the trees would serve as a noise buffer, and there was no testimony that they were needed for a sun shield or wind break.

The Highway Department "reconsidered," adding the trees only after substantial pressure from citizens, some of whom were Rushmore residents. There is substantial evidence that the disputed strip was intended solely for the purpose of screening a few private property owners from the highway and power line.

█ We do not hold that every condemnation of a green belt is unconstitutional, simply because it serves to benefit owners of private property abutting the highway. To the contrary, we are of the view that such use should normally constitute a public use in the constitutional sense. However, under the unique facts of this case, a large section of the proposed green belt is separated from the highway by the shopping center. Thus, the proposed green belt would result in a benefit to four or five private property owners, with very little, if any, benefit to users of the highway. Under these circumstances, and because the proposed green belt arose as an afterthought and was not a contemplated part of any of the other 16 miles of freeway improvement, we believe there was substantial evidence in support of the trial court's determination that public use was not established.

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.