[No. 1398-1.    Division One—Panel 2.    October 16, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. REED L. BURCH *et al., Defendants,* MARGARET CATHERINE DOWNEY *et al., Petitioners.*

WILLIAMS, J., dissents by separate opinion.

*Paul Sinnitt,* for petitioners.

*Slade Gorton, Attorney General,* and *James P. Walsh, Assistant,* for respondent.

FARRIS, A.C.J.—The petitioners, Margaret Catherine Downey and Mary Elizabeth Flowers, sisters, are the owners through inheritance of a farm in the Green River Valley near the city of Kent, Washington. Their family has owned the land since it was originally homesteaded in the 1860's. It is proposed that State Route (hereinafter referred to as SR) 516 which is intended to connect Interstate 5 with SR 181 and SR 167 near the city of Kent, will require 5.24 acres from a 17.31 acre tract and 10.12 acres from a 34.96 acre tract, both of which are now owned by the petitioners. After the taking, there will be a 1.34 acre tract

north of the proposed SR 516; a 10.73 acre tract south of SR 516; a 14.09 acre tract north of SR 516; and a 10.75 acre tract south of SR 516. Thus, what is now a fertile tract of approximately 50 acres of farmland will be four separate smaller parcels severed by a 4-lane highway which is to be raised by fill from a low of 10 feet to a high of 27 feet above the farmland. The petitioners prefer to maintain their farm as it now is. They seek to review by certiorari the entry of an order adjudicating public use as to a portion of their property which the state intends to condemn for highway purposes. They object to the highway going over their farmland at all and argue alternatively that if it must go over their land it should only traverse the most southerly portion.

The petitioners urge this court to rule that the trial court's holding that their property is necessary for the admitted public use is arbitrary and capricious. They also assign error to the failure of the trial court to find that the highway commission should have established prima facie compliance with two state laws which became effective August 9, 1971: the State Environmental Policy Act of 1971, RCW 43.21C, and RCW 47.04.120.

In adjudicating a petition for public use and necessity pursuant to RCW 8.04.070, the trial court must answer affirmatively three interrelated questions: (1) whether the use in question is actually a public use; (2) whether the interests of the general public require the use; and (3) whether the subject properties are really necessary to facilitate the public use. *State v. Bank of Cal.*, 5 Wn. App. 861, 491 P.2d 697 (1971) and cases cited therein. It is not seriously disputed by petitioners that the trial court was correct in holding that the first two requirements of the test were met. However, they strenuously assign error to finding 3 of the trial court:

> That the property and property rights so described are necessary for a public use of the State of Washington, to-wit: the construction, maintenance and operation of SR 516.

■  In order to overcome the presumption that lands selected by the state are really necessary to carry out a public use, the property owner must demonstrate that the state's decision was reached in an arbitrary, capricious or fraudulent manner, or was made in bad faith. *Tacoma v. Welcker,* 65 Wn.2d 677, 684, 399 P.2d 330 (1965).

> Under the provisions of Const. Art. 1, § 16 (amendment 9)[1] and our interpretation thereof, the issue of whether a proposed acquisition be really for a public use is solely a judicial question, although a legislative declaration thereof will be accorded great weight. *Miller v. Tacoma, supra,* and cases cited. On the other hand, the issue of whether the contemplated acquisition is necessary to carry out the proposed public use presents a legislative question, and a declaration of necessity by the appropriate legislative body will, by the courts, be deemed conclusive, in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud. *Medical Lake v. Brown,* 63 Wn. (2d) 41, 385 P. (2d) 387 (1963), and cases cited.

The petitioners proposed an alternate route at the limited access hearing and at trial. They argued that the route which they proposed as an alternative was superior to the state's plan. Their expert witness, Mr. Gerald Cyzewski, offered his views that there would be less harm to adjoining property owners under petitioners' route and that it was superior to the route recommended by the state. Petitioners argue that the refusal by the state to accept the alternate route is evidence which necessitates a finding of arbitrary and capricious conduct. Opposed to these assertions by the petitioners were the findings of the engineers for the Washington State Highways Department that the alternate route proposed by petitioners would be greater in length, and would require a cost of approximately $118,000 more than the cost of the route recommended by the state.

---

[1]Const. art. 1, § 16 (amendment 9) provides in part: "Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public:  .  .  ."

The state also introduced testimony that the petitioners' alternate route would require the acquisition of additional rights-of-way and would have a more severe impact upon neighboring property.

■ Arbitrary and capricious conduct is willful and unreasoning action taken without consideration and regard for the facts or circumstances. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955). Even if we might have required a stronger showing, our review is limited to an examination of the record to determine whether there is evidence to support the findings of fact upon which the trial court based its conclusions. *State v. Kingman,* 77 Wn.2d 551, 463 P.2d 638 (1970).

We find substantial evidence in the record to support the trial court's finding. We adhere to the decision in *Welcker* on page 684:

> Action, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even though there be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached. *Smith v. Hollenbeck,* 48 Wn. (2d) 461, 294 P. (2d) 921 (1956).

Petitioners' final assignment of error relates to the alleged failure of the Department of Highways to comply with the State Environmental Policy Act of 1971, RCW 43.21C, and with RCW 47.04.110-.130. Petitioners contend that it was improper for the trial court to enter the order adjudicating public use without a showing by the state that a "report" and a "detailed statement" on the environmental impact of the proposed highway had been prepared, as required by RCW 47.04.120 and RCW 43.21C.030 (c)(i), respectively. The trial court ruled that the Department of Highways was not required to comply with these statutes because to do so would amount to a retroactive application of the statutes. We affirm on other grounds.

The two legislative acts have added a new dimension to proceedings of this type. The question before the trial court was whether they applied in the *instant* proceeding and

that question turned on the effective date of RCW 47.04.110-.130 as to the "report" and the stage of the proceedings as to the "detailed statement" required by the State Environmental Policy Act.

The act which declared state policy regarding the environmental impact of construction or reconstruction of highways specifically provided when the report on environmental impact would be required. RCW 47.04.120 provides in part:

> Whenever the department of highways determines that a state highway project will significantly affect the quality of human environment, and in every case when a state highway is to be constructed in a new location or a state highway reconstruction project will require additional right of way, the department of highways, prior to holding the first public hearing relating to the location or design of the highway, shall prepare a report on the environmental impact which may reasonably be expected to occur as a result of such constructions: *Provided,* That if in respect to any project on which one or more hearings have occurred prior to August 9, 1971, the department of highways shall prepare the environmental report prior to conducting the next public hearing.

There were no public hearings on this project after August 9, 1971, the effective date of RCW 47.04.120. If there had been, the report would have been required. *See Brooks v. Volpe,* 460 F.2d 1193 (9th Cir. 1972); *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1971). We also find that the request for the "detailed statement" required by the State Environmental Policy Act of 1971 was not timely made.

Affirmed.

SWANSON, J., concurs.

WILLIAMS, J. (dissenting)—The most important point of law in the case is whether the evidence of irreparable damage to the countryside should have been considered by the court in the light of the Environmental Protection Act of 1971. It is no longer enough in a condemnation proceeding for the administrative agency and the court to consider

only the necessity of the public use for which the land is sought—in this case a highway. The agency and the court must also consider RCW 43.21C.020 which specifically requires:

all agencies of the state to use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state and its citizens may:

(a) Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

(b) Assure for all people of Washington safe, healthful, productive, and esthetically and culturally pleasing surroundings;

(c) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(d) Preserve important historic, cultural, and natural aspects of our national heritage;

(e) Maintain, wherever possible, an environment which supports diversity and variety of individual choice;

(f) Achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(g) Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

(3) The legislature recognizes that each person has a fundamental and inalienable right to a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment.

The highway commission, as an agency of the state, must follow the imperative of the act and accept responsibility for the environment, as well as the highways. *Brooks v. Volpe,* 460 F.2d 1193 (9th Cir. 1972); *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1971). *Accord, Morningside-Lenox Park Ass'n v. Volpe,* 334 F. Supp. 132 (N.D. Ga. 1971); *Environmental Defense Fund, Inc. v. Corps of Engineers of U.S. Army,* 325 F. Supp. 728 (E.D. Ark. 1971). *See also Calvert*

*Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Comm'n,* 449 F.2d 1109 (D.C. Cir. 1971); *Zabel v. Tabb,* 430 F.2d 199 (5th Cir. 1970), *cert. denied,* 401 U.S. 910 (1971).

The contention of the highway commission that the application of the environmental act to this case would be retroactive is fully answered in the two Ninth Circuit Court of Appeals cases: *Brooks v. Volpe, supra,* and *Lathan v. Volpe, supra.*

The environmental question was fairly raised during the trial which commenced subsequent to the date the environmental act went into effect. The parties in interest were before the court. The court should not have restricted itself to the evidence concerning the public necessity for the roadway only, but should have considered also the results of the impact of the project upon the environment.

I dissent.

Petitions for rehearing denied February 22, 1973 and March 26, 1973.

Review denied by Supreme Court May 1, 1973.