[No. 43199.    En Banc.    January 9, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD D. BRANNAN *et al., Defendants,* ARTHUR L. COHEN *et al, Petitioners.*

*Hickman & Webster* and *Lawrence Hickman*, for petitioners.

*Slade Gorton, Attorney General*, and *Joseph P. Loonam* and *Charles F. Secrest, Assistants*, for respondent.

*Slade Gorton, Attorney General, Lloyd W. Peterson, Assistant, Robert F. Patrick, Prosecuting Attorney*, and *Dolores Jane Cooper*, amici curiae.

ROSELLINI, J.—This matter is before the court upon certiorari to review an order of public use and necessity, entered by the Superior Court for Whitman County. The action was brought by the State to condemn lands for a state route, SR 276, which is planned as a 4-lane highway carrying traffic around the outskirts of Pullman, Washington. The petitioners own land used as their residence in the Palouse River Valley about 2 miles northwest of Pullman. The land is in a quiet suburban area with natural surroundings, including two adjacent ravines which serve as habitats for wildlife. The proposed highway right-of-way line will pass within approximately 100 feet of the petitioners' property and the construction of the highway will result in substantial damage to the wildlife "cover" located in the adjacent ravines.

At the hearing in this matter, the petitioners objected to the routing of the highway past their home and through the ravines. They did not object to the route of the highway generally but rather contended that the highway commission should have adopted a different route in the vicinity of their residence.

The Superior Court, after hearing evidence offered by the petitioners and by the State, concluded that applicable environmental laws and statutory procedures had been complied with by the Washington State Highway Commission and that relevant factors had been duly weighed. It refused to find that, in selecting the route for the highway, the commission had acted in bad faith, fraudulently, or arbitrarily and capriciously. An order of public use and necessity was entered accordingly.

In challenging this order, the petitioners admit that highway purposes constitute a public use but propose that the order of public use and necessity be set aside because the trial court did not make an express finding that the public interests require the taking of the land in question, or that the property is really necessary for the proposed public purpose. For the proposition that such findings are mandatory, they cite *State ex rel. Sternoff v. Superior Court*, 52 Wn.2d 282, 325 P.2d 300 (1958); *State ex rel. Wenatchee-Beebe Orchard Co. v. Superior Court*, 57 Wn.2d 662, 359 P.2d 146 (1961); *Southwest Suburban Sewer Dist. v. Burien Gardens, Inc.*, 61 Wn.2d 199, 377 P.2d 431 (1963); *State v. Belmont Improvement Co.*, 80 Wn.2d 438, 495 P.2d 635 (1972).

While the cases cited support the proposition that, before an order of public use and necessity can be entered, the condemning authority must establish (1) that the proposed use is really a public use, (2) that the public interests require it, and (3) that the property appropriated is necessary for the proposed public use, none of them holds that the superior court must make an express finding upon each of these elements. Rather this court has, in those cases where the question has been raised, looked to the record and the statutory authority of the condemnor to determine whether these prerequisites were present.

The trial court in this case made no express finding upon these two questions. However, the lengthy findings which it entered concerning the history of the development of the

plan for the highway, read in conjunction with its oral decision, with which they are consistent, leave no doubt that the court had determined that the public interests required the proposed highway and that the condemnation of the petitioners' property was necessary for the construction of the highway as designed and routed. Omission of a formal finding under such circumstances is not prejudicial error. *Chamness v. Marquis*, 62 Wn.2d 509, 383 P.2d 886 (1963).

The court indicated in its oral opinion that it would perhaps have chosen a different route, had the decision been its to make, but properly recognized that the choice of route is an administrative prerogative and not a judicial one.

We do not understand the petitioners to contend that the public interest would not be served by construction of the highway. They object only to the route selected, as it affects their property and adjacent ravines. At the hearing in this proceeding, they offered evidence of alternative routes which their experts testified would be feasible. These alternatives had not been previously submitted to the highway department, although it had, over a period of years, conducted a number of well-publicized hearings at which members of the public were invited to make comments and suggestions. The commission did in fact consider many alternatives, including alternative routes in the area of the petitioners' property, and finally chose the route which it found most feasible and acceptable to the community planning groups which had participated in the development of the design and location decisions.

SR 276 has been established as a state route by statute, RCW 47.17.502, which designates only the terminal points. Authority to select the route is lodged in the highway commission under RCW 47.28.010.

It is not disputed that the construction of a state highway is a public purpose. Once the purpose for which the lands are taken has been adjudged to be public, the

kind and type of roadway, the route to be followed, the design and engineering details become the subject in administrative decision, and these decisions will not be set aside or molested by the courts unless shown to have been arrived at without statutory authority or by bad faith or fraud, or capriciously and arbitrarily. *Deaconess Hosp. v. State Highway Comm'n*, 66 Wn.2d 378, 403 P.2d 54 (1965). Such a decision might well be found to be arbitrary and capricious if the impact on the environment was not given adequate consideration.

■  A declaration of necessity by the appropriate legislative or administrative authority will be deemed conclusive in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud. *State v. Burdulis*, 70 Wn.2d 24, 421 P.2d 1019 (1966); *State v. Dawes*, 66 Wn.2d 578, 404 P.2d 20 (1965); *Tacoma v. Welcker*, 65 Wn.2d 677, 399 P.2d 330 (1965); *Medical Lake v. Brown*, 63 Wn.2d 41, 385 P.2d 387 (1963); *King County v. Theilman*, 59 Wn.2d 586, 369 P.2d 503 (1962), and *State ex rel. Sternoff v. Superior Court, supra. Accord, State v. Burch*, 7 Wn. App. 657, 501 P.2d 1239 (1972). *See also State v. Belmont Improvement Co., supra,* and *State ex rel. Wenatchee-Beebe Orchard Co. v. Superior Court, supra.*

Seldom has this court found that a condemning authority has abused its trust in making a declaration of public necessity. This should not be surprising, for it is not to be presumed that such abuses often occur. In *King County v. Theilman, supra,* we concluded that the county commissioners had acted so arbitrarily and capriciously as to be guilty of constructive fraud, when they condemned land for a road which benefited only private property and did not benefit the public generally. (*But see State v. Belmont Improvement Co., supra.*) In *State v. Bank of California*, 5 Wn. App. 861, 491 P.2d 697 (1971), condemnation of a strip of land designated as a green belt was held invalid by the Court of Appeals, Division Two, because it benefited only

adjoining property owners and did not benefit the general public or some segment of it. And in *State ex rel. Sternoff v. Superior Court*, 52 Wn.2d 282, 325 P.2d 300 (1958), this court held that two tracts of land could not be taken for a purpose different from that which was authorized by statute. Since they were not to be used for an authorized purpose, we said, they were not "necessary" for such a purpose.

Neither of those objections is present in this case. It is not questioned that the petitioners' land is to be used for a purpose authorized by statute, and it is not suggested that the route chosen is designed to benefit private individuals rather than the public generally. It is simply the position of the petitioners that another feasible route should have been chosen, so as to avoid disturbing the petitioners in the quiet enjoyment of their property and the destruction of nearby ravines which serve as wildlife habitats.

The record shows that the route of this highway was selected after a lengthy investigative and deliberative process which began in 1965 and involved consultation with local planning bodies, other governmental agencies and interested members of the public. Pertinent data was gathered on topography, rainfall, land use, and wildlife and flora inventories. An environmental impact statement was prepared and filed. A corridor public hearing was held in 1970, which was widely publicized and at which citizen "input" was invited. Alternative corridor proposals were solicited.

The petitioners, although they lived at their present address, did not attend this hearing, nor did they attend the subsequent design hearing which was held in 1971 and to which the public was invited. The corridor and design chosen by the highway authorities were not opposed by any of the local planning or governmental bodies, nor was there any citizen outcry against them.[1]

---

[1]An amicus curiae brief has been filed with the court on this appeal, purportedly authorized by a number of organizations interested in the

On June 13, 1972, a limited access hearing was held. The petitioners, as abutting owners, were given notice of this hearing, pursuant to RCW 47.52.133. They attended and voiced their objections to the proposed route but did not propose a specific alternate route. No appeal was taken from the highway commission's adoption of the access plan. Thereafter, the State commenced to acquire land for the highway, through negotiation and condemnation. A number of parcels had been acquired when this action was begun.

In resisting the action, the petitioners questioned the validity of the limited access findings and order, and now contend that the court below erred in refusing to declare them void.

If an existing highway, road or street is to be established as a limited access facility, abutting owners or reputed owners must be given notice of the proposal and an opportunity to be heard. RCW 47.52.133. Such notice and opportunity for hearing are a condition precedent to the right to institute condemnation proceedings. *State ex rel. Dawes v. State Highway Comm'n*, 63 Wn.2d 34, 385 P.2d 376 (1963); *State ex rel. Sternoff v. Superior Court, supra.* However, as we said in the *Dawes* case, the State cannot rely upon the findings of the highway commission to prove its right to an order of public use and necessity, but must establish that right as provided by law. Whether the contemplated use be really public is still a judicial question, and must be determined as such, without regard to any legislative assertion that the use is public. Const. art. 1, § 16 (amendment 9).

---

protection of the environment. It appears that none of these made known its interest in the preservation of the ravines which lie in the path of the designated route prior to the institution of this proceeding. The brief is largely devoted to questions not raised by the parties and not properly cognizable in a condemnation action. The brief does not assert that the contentions of amicus were ever introduced before the highway commission or any other interested body during the years the project was being explored and planned. This court does not consider contentions brought before it in this manner. *Long v. Odell*, 60 Wn.2d 151, 372 P.2d 548 (1962); *Batchelor v. Madison Park Corp.*, 25 Wn.2d 907, 172 P.2d 268 (1946).

The findings and order of the highway commission, entered with respect to the limited access hearing which was held June 13, 1972, reflect the fact that notice was given to all abutting owners, including the petitioners. The petitioners were among those who appeared at the hearing. They also show that the final environmental impact statement was before the commissioners who conducted the hearing at the time. Not only do the findings and order show that the statutory condition precedent was satisfied, the petitioners do not dispute that they were given notice and appeared at the hearing, and that a copy of the findings and order was mailed to them as provided by RCW 47.52.137.

Under RCW 47.52.195 (limited access facilities), the petitioners had a right to petition for review of the commission's findings and order, as provided in the administrative procedure act, RCW 34.04, as amended. RCW 47.52.137 provides that the determination made by the highway authority shall become final 30 days after service by mail of copies of the findings and order, unless a review is taken as provided in the act.

Neither the petitioners nor anyone else petitioned for review of the limited access proceeding. They now seek to circumvent these provisions by asserting that the findings and order are void upon their face. Their theory is that since the findings specify one piece of evidence which was before the commissioners—the environmental impact statement—the court may examine that statement to determine whether it shows that environmental damage will be done in the vicinity of the petitioners' property and to the property itself. To establish the fact of such damage, they rely upon a letter which they wrote and which is incorporated in the statement. Since there will be environmental damage, they say, the findings and order were void.

The impact upon the environment of the proposed highway was one of the matters which was properly before the commissioners for consideration at the limited access hearing. *Leschi Improvement Council v. State Highway*

*Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974). As a majority of this court indicated in that case, the adequacy of the consideration given to the environmental impact can be reviewed by the superior court, either upon petition of an abutting owner, as provided in the statute, or by certiorari if the petitioner is not an abutting owner but can show a sufficient interest in the subject matter of the hearing. Failure to give proper consideration to environmental factors would constitute error on the part of the commissioners, but it does not render the hearing a nullity.

The only authority cited by the petitioners in support of their theory that the findings and order are void is *State ex rel. Cation v. Superior Court,* 110 Wash. 506, 509-10, 188 P. 546 (1920). That action was, like this, a condemnation proceeding. The county had purportedly established a road, pursuant to Rem. Code § 5634, which provided for a hearing after notice to persons whose lands would be affected. The statute provided that proof of service should be made by affidavit. At the condemnation hearing, the defendants attacked the validity of the order upon the ground that it showed upon its face that the commissioners did not have jurisdiction to proceed with the hearing. The order recited that there had been due service "as appears from the sheriff's return on file herein." The sheriff's return was not made by affidavit. This court held that the commissioners did not obtain jurisdiction over the defendants, because the statute was not strictly complied with, and this fact appeared from the order of the commissioners, "when taken as a whole."

This court said:

> That a recital of due service in the judgment of a court of general jurisdiction is sufficient, as against collateral attack, we have held. [Citing cases.] But while the board acts judicially in a matter of this kind, its jurisdiction is special and limited by the statute which confers the power.

*State ex rel. Pagett v. Superior Court,* 47 Wash. 11, 91 P. 241 (1907), a case relied upon by the county in that action,

had involved an attack upon an order based upon a contention that some signers of a required petition were not householders. The court there said that, when jurisdiction has once been acquired under a proper petition and notice, the subsequent proceedings, being presumed regular, cannot be collaterally attacked. Distinguishing that case in the *Cation* case, this court said, at page 511:

> It is manifest that the board, having jurisdiction of the subject-matter of establishing a road, and jurisdiction of the person of the parties interested, by the due service of process, may have found either way upon the question of fact as to whether or not the signers of the petition were householders; and such finding, if not appealed from, would be binding upon all parties then before the board, hence a very different question was there presented and decided.

It will be seen that *State ex rel. Cation v. Superior Court, supra,* does not stand for the proposition that an order of a highway authority, entered after a statutory hearing, can be collaterally attacked upon the ground that the authority failed to give proper and due consideration to the evidence before it. Rather that case recognizes and approves the doctrine of *State ex rel. Pagett v. Superior Court, supra,* that an order of such an authority, which shows on its face that the authority had jurisdiction of the subject matter and the parties, cannot be subjected to collateral attack for error in the proceedings.

It is not disputed that the commission had jurisdiction of the subject matter of the proposed highway and of these petitioners when it conducted the limited access hearing. The contention that its findings and order entered after the hearing are void on their face has not been sustained.

The petitioners devote a good portion of their brief to a contention that the highway commission did not comply with the requirements of the State Environmental Policy Act of 1971 (RCW 43.21C) and RCW 47.04, both of which require the compiling and circulation of environmental impact statements. It has been determined by this court that

such a statement must be before the highway commission when it conducts a limited access hearing. *Leschi Improvement Council v. State Highway Comm'n, supra.* Like the question whether the commission gave adequate consideration to the environmental impact of its proposed project when it entered its order declaring the project a limited access facility, the question whether it had before it an adequate environmental impact statement was subject to judicial review upon a petition for review or certiorari and cannot be raised collaterally in this proceeding.

The Superior Court correctly held that the proceedings at the limited access hearing were not properly before it for review. The ground which it gave for its decision was that the petitioners were barred by laches, having failed to pursue the appellate remedy prescribed by the limited access statute, and the highway commission having acquired other adjacent properties and having thus substantially changed its position in the interim, relying upon the validity of the findings and order. That rationale was sound and supports the rule that an administrative order, showing upon its face that the tribunal had jurisdiction of the parties and the subject matter, is not subject to collateral attack by one who was a party to the proceeding.

We do not understand the petitioners to suggest that the statutes in question require the court to have before it an environmental impact statement when it enters an order of public use and necessity. As the commission points out, the statutes, by their terms, require such statements where agency action is involved, but do not purport to require them in judicial proceedings. *See* RCW 47.04.120; RCW 43.21C.030.

Although it recognized that it was not called upon to review the proceedings at the limited access hearing, the Superior Court nevertheless examined the environmental impact statement which had been before the commission and found it adequate. Since this action was gratuitous on

its part, if it erred in its appraisal of the statement as the petitioners contend, that error was harmless.

▪ While the court was not called upon to review the environmental impact statement in this action, it could properly consider whether the commission gave due consideration to the effect which the project will have upon the environment. Evidence on this matter was relevant to the question whether the commission, in selecting the highway route, had acted fraudulently or so arbitrarily and capriciously as to amount to constructive fraud. Recognizing the appropriateness of such an inquiry, the Superior Court permitted both parties to introduce evidence concerning the environmental effects and the desirability of adopting other alternatives.

The petitioners produced testimony by a professor of engineering who proposed three feasible alternative routes which would avoid the ravines and would be sufficiently remote from the petitioners' residence so that they would not be bothered by traffic noise. This expert was unwilling to state, however, that any of these routes was preferable to that selected by the commission.

The commission's evidence was that, in selecting the route, it had endeavored to follow the natural contours of the land, thus avoiding unnecessary cuts and fills and consequent soil erosion. Also, it had sought to avoid encroachment upon cultivated land (a primary objective of the local planning bodies). It tended to show that the designers of the project were aware of the wildlife habitat in the vicinity of the petitioners' property on an overall basis and had taken steps in the overall alignment of the project to avoid a wildlife refuge of local significance in another part of the project. The impact upon the environment was viewed from the standpoint of the entire project and not on a segment-by-segment basis.[2]

---

[2] It is the apparent assumption of the petitioners that the applicable environmental statutes require the highway commission to consider the impact of a project, segment by segment as it affects each property owner. We are unaware of any authority which so holds, and we do not

The evidence tended to show that, due to extensive cultivation of land in the area, use of pesticides, and competition among species, there has been a serious decline of wildlife population in the vicinity. The ravines adjacent to the petitioners' property are among the few areas left where wild birds and animals can find "cover." It would appear important, therefore, to preserve this wildlife habitat, if such preservation is feasible. However, it was the policy of the highway department to conform its routes and designs to the expressed needs and wishes of the community, wherever possible, and there can be no doubt from the record that the protection of agricultural lands was one of the foremost objectives of the people who live in this area. Even the petitioners' expert witness who testified concerning the serious threat to wild birds and animals in the vicinity was quick to admit that no private owner of arable land could reasonably be expected to leave it in its natural state for the use of wildlife.

Since agriculture is the dominant concern of the community and its economic life depends upon it, it can hardly be said that the highway commission acted arbitrarily and capriciously when it elected to route this highway so as to avoid the taking of cultivated land wherever possible. Considering the absence of protest, it cannot be doubted that the route selected is in accord with the best interests of the community, as viewed by a majority of its members. The condemning authority was justified in concluding that this route was necessary for the admittedly public purpose of building the highway in question.

While the trial court indicated that, had it been making the decision, it would have given more weight to the importance of preserving wildlife and less to the economic,

---

find that concept expressed in RCW 43.21C or RCW 47.04.110 *et seq.* *See Indian Lookout Alliance v. Volpe,* 484 F.2d 11 (8th Cir. 1973), holding that, under the National Environmental Policy Act of 1969, 42 U.S.C.A. § 4321 (1969), illogical fragmentation of a highway for purposes of considering the environmental impact is improper.

engineering, land use planning and conservation factors which the commission weighted heavily, it correctly recognized that the decision which the commission had made, upon the evidence before it, was within the proper exercise of its authority and could not be said to be arbitrary and capricious.

The petitioners insist that the trial court erred in permitting the commission to show that it had considered environmental factors, while yet maintaining that their evidence of environmental damage was properly admitted. We find no error in the procedure adopted by the trial court. If it was to make an informed judgment upon the issue raised by the petitioners concerning environmental damage, it was necessary that it have before it whatever pertinent evidence the parties could produce. The State, as well as the petitioners, was entitled to a fair hearing.

The petitioners have assigned error to a number of findings entered by the court. Largely these assignments are based upon the contention that the court should not have permitted the State to introduce evidence concerning its attention to environmental matters in the planning process. As we have said, such evidence was material and relevant to issues before the court and was properly admitted. The petitioners have not demonstrated that any of the material findings were unsupported by substantial evidence.

The remaining assignments of error raise questions pertaining to the regularity of the limited access hearing, a proceeding which is not before the court for review in this action.

The order of public use and necessity is affirmed.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied March 13, 1975.